**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

BAPTIST HEALTHCARE SYSTEM, INC.
D/B/A BAPTIST HEALTH FLOYD
1850 State Street
New Albany, IN  47150

CAPITAL MEDICAL CENTER                    Case No. _____
3900 Capital Mall Drive Southwest
Olympia, WA  98502

COMMUNITY HEALTH NETWORK, INC.           **COMPLAINT**
D/B/A COMMUNITY HOSPITAL NORTH           **FOR JUDICIAL REVIEW,**
7150 Clearvista Drive                     **DECLARATORY JUDGMENT,**
Indianapolis, IN  46256                   **AND MANDAMUS RELIEF**

COMMUNITY HOSPITAL OF ANDERSON &
MADISON COUNTY, INC. D/B/A COMMUNITY
HOSPITAL ANDERSON
1515 North Madison Avenue
Anderson, IN  46011

COMMUNITY HOSPITAL OF NOBLE COUNTY,
INC. D/B/A PARKVIEW NOBLE HOSPITAL
401 Sawyer Road
Kendallville, IN  46755

COMMUNITY HOSPITAL SOUTH, INC.
1402 East County Line Road
Indianapolis, IN  46227

COMMUNITY HOWARD REGIONAL
HEALTH, INC.
3500 South Lafountain Street
Kokomo, IN  46902

CRITTENTON HOSPITAL N/K/A ASCENSION
PROVIDENCE ROCHESTER HOSPITAL
1101 West University Drive
Rochester, MI  48307

DLP MARIA PARHAM MEDICAL CENTER LLC
566 Ruin Creek Road
Henderson, NC  27536

DLP RUTHERFORD REGIONAL HEALTH
SYSTEM, LLC
288 South Ridgecrest Avenue
Rutherfordton, NC  28139

ELKHART GENERAL HOSPITAL, INC.
600 East Boulevard
Elkhart, IN  46514

EMMA L. BIXBY MEDICAL CENTER
D/B/A PROMEDICA BIXBY HOSPITAL
818 Riverside Avenue
Adrian, MI  49221

FAIRBANKS HOSPITAL, INC.
8102 Clearvista Parkway
Indianapolis, IN  46256

FAUQUIER MEDICAL CENTER LLC
500 Hospital Drive
Warrenton, VA  20186

FRANCISCAN ALLIANCE, INC.
D/B/A FRANCISCAN HEALTH HAMMOND
5454 Hohman Avenue
Hammond, IN  46320

FRANCISCAN ALLIANCE, INC.
D/B/A FRANCISCAN HEALTH MICHIGAN CITY,
F/K/A FRANCISCAN SAINT ANTHONY
MEMORIAL HEALTH CENTER
3500 Franciscan Way
Michigan City, IN  46360

FRANCISCAN ALLIANCE, INC.
D/B/A FRANCISCAN HEALTH MOORESVILLE
1201 Hadley Road
Mooresville, IN  46158

FRANCISCAN ALLIANCE, INC. D/B/A
FRANCISCAN HEALTH LAFAYETTE EAST
1701 South Creasy Lane
Lafayette, IN  47905

2

GOLDEN VALLEY MEMORIAL HOSPITAL
DISTRICT D/B/A GOLDEN VALLEY MEMORIAL
HOSPITAL
1600 North Second Street
Clinton, MO  64735

GOOD SAMARITAN HOSPITAL
520 South Seventh Street
Vincennes, IN  47591

GOOD SAMARITAN HOSPITAL
2222 Philadelphia Drive
Dayton, OH  45406

HILLSDALE COMMUNITY HEALTH CENTER
168 South Howell Street
Hillsdale, MI  49242

HOLLAND COMMUNITY HOSPITAL
602 Michigan Avenue
Holland, MI  49423

INDIANA UNIVERSITY HEALTH ARNETT INC.
5165 McCarty Lane
Lafayette, IN  47905

INDIANA UNIVERSITY HEALTH
BLOOMINGTON INC.
2651 East Discovery Parkway
Bloomington, IN  47408

INDIANA UNIVERSITY HEALTH MORGAN, INC.
N/K/A INDIANA UNIVERSITY HEALTH, INC.
2209 John R. Wooden Drive
Martinsville, IN  46151

INDIANA UNIVERSITY HEALTH NORTH
HOSPITAL INC.
11700 North Meridian Street
Carmel, IN  46032

INDIANA UNIVERSITY HEALTH WEST
HOSPITAL INC.
1111 North Ronald Reagan Parkway
Avon, IN  46123

INDIANA UNIVERSITY HEALTH, INC.
D/B/A IU HEALTH METHODIST HOSPITAL
1701 North Senate Blvd
Indianapolis, IN  46202

MEMORIAL HOSPITAL OF SOUTH BEND, INC.
615 North Michigan Street
South Bend, IN  46601

MEMORIAL HOSPITAL, THE
826 West King Street
Owosso, MI  48867

MERCY MEMORIAL HOSPITAL CORPORATION
D/B/A PROMEDICA MONROE REGIONAL
HOSPITAL
718 North Macomb Street
Monroe, MI  48162

MIAMI VALLEY HOSPITAL
One Wyoming Street
Dayton, OH  45409

PARKVIEW HOSPITAL, INC. D/B/A
PARKVIEW REGIONAL MEDICAL CENTER
11109 Parkview Plaza Drive
Fort Wayne, IN  46845

PROVIDENCE HOSPITAL
6801 Airport Boulevard
Mobile, AL  36685

RCHP – FLORENCE LLC D/B/A
NORTH ALABAMA SHOALS HOSPITAL
201 West Avalon Avenue
Muscle Shoals, AL  35661

RCHP BILLINGS – MISSOULA LLC
D/B/A COMMUNITY MEDICAL CENTER
2827 Fort Missoula Road
Missoula, MT  59804

RIVER DISTRICT HOSPITAL N/K/A
ASCENSION RIVER DISTRICT HOSPITAL
4100 River Road
East China Township, MI  48054

SAINT ELIZABETH MEDICAL CENTER, INC.
D/B/A ST. ELIZABETH DEARBORN
600 Wilson Creek Road
Lawrenceburg, IN  47025

SAINT ELIZABETH MEDICAL CENTER, INC.
D/B/A SAINT ELIZABETH FORT THOMAS
85 North Grand Avenue
Fort Thomas, KY  41075

SAINT THOMAS MIDTOWN HOSPITAL
D/B/A ASCENSION SAINT THOMAS MIDTOWN
HOSPITAL
2000 Church Street
Nashville, TN  37236

SAINT THOMAS RUTHERFORD HOSPITAL
D/B/A ASCENSION SAINT THOMAS
RUTHERFORD HOSPITAL
1700 Medical Center Parkway
Murfreesboro, TN  37129

SALINE HOSPITAL LLC
1 Medical Park Drive
Benton, AR  72015

ST FRANCIS HEALTH LLC
2122 Manchester Expressway
Columbus, GA  31904

ST. JOSEPH HOSPITAL & HEALTH CENTER,
INC. D/B/A ASCENSION ST. VINCENT KOKOMO
1907 West Sycamore Street
Kokomo, IN  46901

ST. MARY MEDICAL CENTER, INC.
1500 South Lake Park Avenue
Hobart, IN  46342

ST. MARY'S HEALTH, INC. D/B/A
ASCENSION ST. VINCENT EVANSVILLE
3700 Washington Avenue
Evansville, IN  47750

ST. MARY'S OF MICHIGAN N/K/A
MYMICHIGAN MEDICAL CENTER SAGINAW
800 South Washington Avenue
Saginaw, MI  48601

ST. VINCENT ANDERSON REGIONAL
HOSPITAL, INC. D/B/A ASCENSION ST.
VINCENT ANDERSON
2015 Jackson Street
Anderson, IN  46016

ST. VINCENT CARMEL HOSPITAL, INC.
D/B/A ASCENSION ST. VINCENT CARMEL
13500 North Meridian
Carmel, IN  46032

ST. VINCENT FISHERS HOSPITAL INC.
D/B/A ASCENSION ST. VINCENT FISHERS
13861 Olio Road
Fishers, IN  46037

ST. VINCENT'S BIRMINGHAM D/B/A
ASCENSION ST. VINCENT'S BIRMINGHAM
810 Saint Vincent's Drive
Birmingham, AL  35205

ST. VINCENT'S EAST D/B/A
ASCENSION ST. VINCENT'S EAST
50 Medical Park East Drive
Birmingham, AL  35235

ST. VINCENT'S ST. CLAIR, LLC D/B/A
ASCENSION ST. VINCENT'S ST. CLAIR
7063 Veterans Parkway
Pell City, AL  35125

THE EAST ALABAMA HEALTH CARE
AUTHORITY D/B/A EAMC - LANIER
4800 48th Street
Valley, AL  36854

UNION HOSPITAL , INC.
1606 North Seventh Street
Terre Haute, IN  47804

WARREN MEMORIAL HOSPITAL, INC.
351 Valley Health Way
Front Royal, VA  22630

WEIRTON MEDICAL CENTER, INC.
601 Colliers Way
Weirton, WV  26062

WHITLEY MEMORIAL HOSPITAL, INC.
D/B/A PARKVIEW WHITLEY HOSPITAL
1260 East State Road 205
Columbia City, IN  46725

WILLAMETTE VALLEY MEDICAL CENTER,
LLC
2700 Southeast Stratus Avenue
McMinnville, OR  97128

      Plaintiffs,

      v.

DOROTHY FINK, Acting Secretary,
U.S. Department of Health and Human Services
Room 700-E
200 Independence Avenue, S.W.
Washington, D.C. 20201

      Defendant.

<u>**COMPLAINT FOR JUDICIAL REVIEW,**</u>
<u>**DECLARATORY JUDGMENT, AND MANDAMUS RELIEF**</u>

1.    The above-named Plaintiff hospitals bring this action under 42 U.S.C.

§ 1395oo(f)(1), for judicial review of a final decision of Defendant, Dorothy Fink, acting in her

official capacity as Acting Secretary of the U.S. Department of Health and Human Services

(**HHS**) and acting through HHS's Provider Reimbursement Review Board (**PRRB** or "**Board**");

and under 5 U.S.C. § 706(1) and 28 U.S.C. § 1361, for an order compelling the Secretary to

furnish to the Plaintiffs data unlawfully withheld and duly owed under the Medicare Act, as

amended by the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (**MMA**), Pub. L. No. 108-173, 117 Stat. 2066, § 951 (codified at 42 U.S.C. § 1395ww note).

2.      In two decisions issued on November 25 and 26, 2024, (**Exhibits 1 & 2**), the Board dismissed the Plaintiffs' challenges to a regulation promulgated by the Centers for Medicare and Medicaid Services (**CMS**), the agency within HHS charged with administering the Medicare program. The regulation describes the Secretary's method of calculating the Disproportionate Patient Percentage (**DPP**) used to settle each Provider's impacted cost report(s) after CMS's publication of a final rule in the Federal Register regarding CMS's Treatment of Medicare Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage. 88 Fed. Reg. 37772 (June 9, 2023) ("**Part C Days Final Rule**" or "**Final Rule**").

3.      Specifically, the Plaintiffs asserted that the Secretary must consistently interpret the phrase "entitled" to benefits, used twice in the statutory DPP formula, when counting patient days for which a patient is (i) entitled to Part A benefits—which, under the Final Rule, now includes Medicare beneficiaries enrolled in Part C plans; and (ii) entitled to supplemental security income (**SSI**) benefits. In both instances, 'entitled' should be interpreted to mean program eligibility.  However, under the Final Rule, when CMS included Part C Days in the Medicare fraction of the DPP, it continued to apply a broad interpretation of entitlement to Part A benefits, thus adding all Part C Days to the Medicare fraction denominator, and a narrow interpretation of entitlement to SSI benefits, thus undercounting the number of Part C Days that should have been counted in the Medicare fraction numerator. When responding to commenters, CMS acknowledged this disparate interpretation of program entitlement would continue to be utilized in the implementation of the Final Rule. 88 Fed. Reg. at 37779-80.

4.     The Board's decisions wrongly held that it lacked jurisdiction because under 42 C.F.R. § 405.1889(b)(1), an appeal from a revised final determination is limited in scope to "only those matters that are specifically revised," and the revised Notices of Program Reimbursement (RNPRs) from which the Plaintiffs appealed only afforded appeal rights "with respect to the treatment of Part C Days in the calculation," and "the reasonableness of the Secretary's interpretation set forth in [the Part C Days Final Rule]." (Board Decisions, Ex. 1 at 10, Ex. 2 at 10, quoting 88 Fed. Reg. at 37787-88).   In fact, the Final Rule addressed the Secretary's treatment of Part C Days with respect to *both* the numerator and denominator of the Medicare fraction.  This appeal challenges the undercount of those Part C days in the numerator.  The Secretary acknowledged that the Plaintiffs' DPPs were recalculated under the Final Rule—even if the Medicare fraction or DSH payment did not change numerically. *Id.* Accordingly, the Medicare Fraction numerator, which includes all SSI Days and not merely those attributable to Part C patients, was revised, and the manner in which CMS calculated the Plaintiffs' DPPs based upon its interpretation of entitlement to SSI benefits is squarely within the permissible scope of appeal from the Plaintiffs' RNPRs.

5.     Moreover, the Board's decisions to *sua sponte* dismiss the Plaintiffs' appeals, in the absence of a formal jurisdictional challenge by the Medicare Administrative Contractor (**MAC**) and without first requesting a response or information from the Plaintiffs, was arbitrary and capricious, an abuse of discretion, and contrary to the applicable statutes and the Board's own Rules. *See* 5 U.S.C. § 706.  Had the Board allowed the case to proceed in accordance with standard procedures, the Plaintiffs could have corrected the Board's failure to recognize that the Part C Final Rule impacted both the numerator and denominator of the Medicare fraction. The Plaintiffs then would have sought expedited judicial review of the issue on appeal regarding the

Secretary's manner of counting SSI Days in the payment calculation, in accordance with Board procedures for challenges to the propriety of a regulation that the Board is compelled to apply. *See* 42 U.S.C. § 1395oo(f), 42 C.F.R. § 405.1842.

6.     Therefore, the Plaintiffs seek an order: (a) under 5 U.S.C. § 706(2), vacating and setting aside the Board's jurisdictional dismissal and its underlying findings and conclusions and retaining jurisdiction over the Plaintiffs' appeals; and (b) on the merits of the Plaintiffs' underlying appeals, (i) under § 706(2), setting aside the Disproportionate Share Hospital (DSH) payments issued to the Plaintiffs and finding the Secretary's manner of counting SSI Days in the Medicare fraction numerator of the DPP is contrary to § 1395ww(d)(5)(F)(vi)(I), and (ii) under 5 U.S.C. § 706(1) or 28 U.S.C. § 1361, compelling the Secretary to furnish to the Plaintiffs the data necessary to calculate their own DPP, as directed by Congress in Section 951 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (**MMA**), including the full SSI Days data held by CMS in the MEDPAR database for all of a hospital's patients that are identified by the agency as both Medicare and SSI beneficiaries.

## JURISDICTION AND VENUE

7.     This case arises under Title XVIII of the Social Security Act, as amended, 42 U.S.C. § 1395, *et seq*. (the "Medicare Act"); the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*.; and the Declaratory Judgment Act, 28 U.S.C. § 2201, to obtain judicial review of actions of the Secretary and her agents, the Medicare Administrative Contractors ("MACs"), which resulted in the Plaintiffs receiving reduced Medicare reimbursement for their fiscal years at issue.

8.     Jurisdiction is proper under 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1331.

9.     Jurisdiction also lies pursuant to 28 U.S.C. § 1361 because the Plaintiffs are entitled to a writ of mandamus requiring the Secretary to ensure that the Plaintiffs' DSH adjustments are calculated in accordance with the law from the best available data and to

produce the same to the Plaintiffs for review, in accordance with Congressional directive at MMA § 951.

10.    Venue is proper in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e).

## PARTIES

11.    During the cost reporting periods at issue herein, all Plaintiffs operated acute-care, inpatient hospitals and were participating Medicare providers that served a disproportionate share of low-income patients.  All of the Plaintiffs are identified in the Schedule of Providers attached hereto as **Exhibit 3**, which enumerates every claim the Plaintiffs appealed to the PRRB as part of a group, and all Plaintiffs are therein identified by their Medicare provider numbers, names, and applicable fiscal years subject to this appeal.

12.    The Defendant is Dorothy Fink, in her official capacity as Acting Secretary of the U.S. Department of Health and Human Services (**HHS**), the federal agency that administers the Medicare program. References to the Secretary herein are meant to refer to her, to her subordinates and agents, and to her official predecessors or successor as the context requires.

13.    The Centers for Medicare and Medicaid Services (**CMS**) is a component of HHS with responsibility for day-to-day operation and administration of the Medicare program.  CMS was formerly known as the Health Care Financing Administration. References to CMS herein are meant to refer to the agency and its agents and predecessors.

## NATURE OF ACTION

14.    The Plaintiffs assert that their DSH reimbursement calculations were understated due to the failure of CMS and the relevant Medicare Administrative Contractors ("**MAC**" or "**contractor**") while implementing the Final Rule, to include in the numerator of the Medicare fraction of the  DSH calculation all patient days for patients who were eligible for and enrolled in

the SSI program but who may not have received an SSI payment for the month in which they received services (hereinafter "**SSI Enrollees**"), as required by 42 U.S.C. § 1395ww(d)(5)(F) (the "**DSH statute**").

15.    In enacting the DSH statute, Congress intended the Medicare DSH payment to compensate hospitals, like the Plaintiffs in the instant case, that shoulder the financial burden of providing care to a disproportionate number of low-income patients. It is based on a proxy measure for a hospital's low-income patient utilization which is the sum of two fractions expressed as a percentage. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi); 42 C.F.R. § 412.106(b).

16.    The U.S. Supreme Court in *Becerra v. Empire Health Foundation*, 142 S. Ct. 2354 (2022) held that a hospital patient is "entitled" to Medicare Part A benefits, and included in the Medicare fraction denominator, so long as they meet the basic Part A program eligibility criteria and regardless of whether Medicare covers or pays for his or her hospitalization. The Secretary insists that a Medicare beneficiary enrolled in a Part C plan remains entitled to Part A benefits, and therefore is counted in the Medicare fraction denominator, but that same patient is "entitled" to SSI benefits, and thus included in the Secretary's count of SSI Days in the Medicare fraction numerator, only if he or she actually receives an SSI payment from the Social Security Administration ("SSA") for the month of his or her hospitalization. Treatment of Part C Days in the Calculation of a Hospital's Medicare Disproportionate Patient Percentage, Final Action, 88 Fed. Reg. 37772, 37779 (June 9, 2023) (reaffirming the Secretary's policy of counting SSI Days to exclude SSI Enrollees that did not receive an SSI payment for the month of hospitalization).

17.    As explained below, the Secretary's dissimilar construction of the terms "entitled" in the DSH statute violates the Medicare Act because it contravenes the statute's plain meaning

and intent. The U.S. Supreme Court is currently reviewing this discrepancy in *Advocate Christ Medical Center v. Becerra*, No. 23-715, *on appeal from* 80 F. 4th 346 (D.C. Cir. 2023).

18.    As a result of the Secretary's erroneous construction of the statute which undercounts SSI Days, the Plaintiffs were denied Medicare DSH payments to which they are lawfully entitled, when the Secretary promulgated the Final Rule on the treatment of Part C Days in the calculation of a hospital's Medicare Disproportionate Patient Percentage, introducing new Medicare Part C days into the Medicare fraction denominator without introducing the correct number of SSI Days into the numerator. The Plaintiffs therefore seek declaratory and injunctive relief against the Secretary, an order setting aside the MACs' invalid payment determinations and directing the recalculation of the Plaintiffs' DSH adjustments in accordance with the plain meaning of the statute, and an order directing the Secretary to furnish to hospitals the data necessary to verify their own DSH payment calculations.

## THE MEDICARE PROGRAM

19.    Medicare is a federal program that provides health insurance for the aged, disabled and certain individuals with end-stage renal disease. 42 U.S.C. § 1395, *et seq*. The Medicare program is federally funded and is administered by the Secretary through CMS and its contractors, the MACs. 42 U.S.C. §§ 1395kk and 1395kk-1.

20.    The Medicare Act is composed of five parts.  *See* 42 U.S.C. § 1395, *et seq*.

21.    Part A of the Medicare Act covers "inpatient hospital services."  *See* 42 U.S.C. §§ 426(c), 1395c, *et seq*. The Medicare Part A benefit consists of the right to have Medicare payment made on a beneficiary's behalf for a limited number of days of inpatient hospital care during a spell of illness. *See* 42 U.S.C. §§ 426(a), 1395d(a)(1). Specifically, the Part A benefit entitles an individual to have payment made on his or her behalf for up to 90 days of inpatient

hospital services in a spell of illness, with a lifetime reserve of 60 additional days that a beneficiary may elect to use. 42 U.S.C. § 1395d(a)(1); 42 C.F.R. § 409.61(a).

22.     Part B is an optional program that covers physician services and certain other outpatient medical services that are not covered under Part A, if a premium is paid. *See* 42 U.S.C. §§ 1395j—1395w-6.

23.     Part C, known at different times as the Medicare+Choice and Medicare Advantage Program, allows participants to elect coverage under approved commercial health insurance plans as an alternative to Medicare's traditional fee-for-service model available under Parts A and B.  42 U.S.C. § 1395w-21(a).

24.     Part D, known as the Medicare Prescription Drug Benefit Program, was enacted as part of the Medicare Modernization Act of 2003 (**MMA**), Pub. L. No. 108-173, 117 Stat. 2066, which was signed into law on December 8, 2003. As relevant here, Medicare Part D provides, *inter alia*, fully subsidized drug benefits for SSI Enrollees. 42 U.S.C. §§ 1395w-101, 1395w-114; 42 C.F.R. § 423.773, 20 C.F.R. § 418.3105.  Part D coverage first began on January 1, 2006.  42 U.S.C. § 1395w-101(a)(2).

25.     Part E sets forth various miscellaneous provisions, including the Prospective Payment System (PPS) for reimbursing Part A inpatient hospital services, and its DSH Statute at issue in this case. 42 U.S.C. § 1395x, *et seq*.

## MEDICARE DSH PAYMENT

26.     Since 1983, the Medicare program has paid most hospitals under a prospective payment system (**PPS**) for inpatient hospital services furnished to an individual who is entitled to benefits under Medicare Part A.  42 U.S.C. §§ 1395ww(d)(1)-(5); 42 C.F.R. Part 412.

27.     Under the inpatient PPS (**IPPS**), hospitals are reimbursed for providing inpatient services to Medicare beneficiaries at a predetermined rate based on the diagnosis-related

grouping (**DRG**) to which a patient is assigned.  Each DRG represents the average resources that are required to provide the inpatient services described by the particular DRG category relative to the national per case average for inpatient hospital services.  42 U.S.C. § 1395ww(d)(4) & (5).

28.    Medicare pays these predetermined, standardized amounts per hospital discharge, subject to certain upward payment adjustments for certain qualifying hospitals.  *Id.*

29.    The IPPS standard rate is based on a national average amount of operating costs incurred to treat a Medicare patient with the assigned DRG.  *See id.*  The payment per discharge is subject to further adjustments to account for additional hospital-specific factors that may cause a hospital to incur greater than average operating costs to treat each Medicare inpatient.  *See* 42 U.S.C. § 1395ww(d)(5).

30.    One of the IPPS payment adjustments is the DSH payment.  42 U.S.C. § 1395ww(d)(5)(F); 42 C.F.R. § 412.106.  A hospital that serves a disproportionate share of low-income patients is entitled to an upward percentage adjustment to the standard payment rate per discharge under the IPPS to compensate for the higher-than-average costs of treating low-income Medicare beneficiaries whose care is paid under the IPPS.  *See* H.R. Rep. No. 99-241, at 15 (1985), *reprinted in* 1986 U.S.C.C.A.N. 579, 593-94.  When it created the DSH adjustment, Congress identified two reasons why hospitals treating a disproportionate share of low-income patients have higher-than-average costs: first, low-income Medicare patients are more costly than average to treat, and second, hospitals that treat a large proportion of low-income patients overall tend to incur higher costs per case for all patients, due in part to the specialized services they provide and other structural characteristics of these hospitals.  *Id.*

## THE DSH PAYMENT CALCULATION

31.     Calculation of the DSH Payment add-on turns on a hospital's disproportionate patient percentage (**DPP**), which is the sum of two fractions expressed as percentages. *See* 42 U.S.C. § 1395ww(d)(5)(F)(vi); 42 C.F.R. §§ 412.106 (b)-(d).

32.     Generally, the greater the two percentages, the greater a hospital's DSH payment.

33.     One of the two fractions used to calculate a hospital's DSH payment is commonly called the "Medicare fraction."  The statute defines the Medicare fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were *entitled to benefits under [P]art A of [Title XVIII]* and were *entitled to supplementary security income benefits* (excluding any State supplementation) under subchapter XVI of this chapter ["**SSI Days**"], and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were *entitled to benefits under [P]art A of [Title XVIII.]*

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) (emphasis added). As the italicized language indicates, the Medicare fraction consists solely of days for patients who were "entitled to benefits under Part A" of Medicare and/or "entitled to [SSI] benefits."  *Id.*  The denominator includes all patient days for which patients were "entitled to" Part A benefits; whereas the numerator includes only those Part A days for patients who were also "entitled to" supplemental security income benefits under Title XVI during the month in which they were hospitalized.

34.     The second of the two fractions used to compute a hospital's DSH payment is referred to as the "Medicaid fraction."  The statute defines the Medicaid fraction as:

> the fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consists of patients who (for such days) were *eligible for medical assistance under a State plan approved under [Title XIX]*, but who were *not entitled to benefits under [P]art A of [Title*

*XVIII]*, and the denominator of which is the total number of the hospital's patient days for such period. [1]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) (emphasis added). As emphasized above, the numerator of the Medicaid fraction consists of days for patients who both were eligible for medical assistance under Title XIX, or Medicaid, and were "not entitled to benefits under [Medicare P]art A" for their "patient days" in the hospital.

35.     The SSI program is a federal program administered by the Social Security Administration (**SSA**) under Title XVI, which provides benefits to low-income individuals who are either aged 65 or older, or are blind or disabled. The SSI program provides a sliding-scale cash stipend to SSI Enrollees who meet certain income and resource thresholds in a particular month, as well as non-cash benefits. For example, the SSI program provides vocational rehabilitation services for disabled SSI Enrollees, continued Medicaid eligibility for SSI Enrollees who exceed the income and resource thresholds for a monthly cash stipend, as well as automatic eligibility for a full subsidy to cover the cost of Medicare Part D prescription drug benefits through the Extra Help program. *See* 42 U.S.C. § 1381, *et seq.*; 42 U.S.C. § 1395w-114; 42 C.F.R. § 423.773 and 20 C.F.R. § 418.3105; *see also* CMS Manual 100-18, Chapter 13, Premium and Cost-Sharing Subsidies for Low-Income Individuals, at §§ 40.2.2, 40.2.5, 70.5.2.

36.     To implement the DSH legislation, CMS determines the number of SSI Days for those patients entitled to both Medicare Part A and SSI by matching data from the Medicare Enrollment Database (**EDB**) and the Medicare Provider Analysis and Review (**MedPAR**) file, which is Medicare's database of all inpatient beneficiary days, with data from a file created for

---

[1] This statute refers to "this subchapter," which means subchapter XVIII of Chapter 7 of Title 42 of the United States Code, also known as Title XVIII of the Social Security Act.

CMS by SSA to identify SSI-"entitled" individuals.  75 Fed. Reg. 50,041, 50,277-81 (Aug. 16, 2010).

### THE SECRETARY'S CONSTRUCTION OF THE DSH STATUTE

37.    The composition of the numerator and denominator of both the Medicare and Medicaid fractions is determined by the meaning and intent of the terms "entitled" and "eligible" in the DSH statute.

38.    Over the last three decades, the Secretary has vacillated in her approach to construing the DSH statute, resulting in a litany of litigation and agency policy changes.

39.    Due to the significant impact of the meaning ascribed to the terms "entitled" and "eligible" in the DSH statute, the Secretary's construction of their meaning and their application to providers' program reimbursement is now on appeal to the Supreme Court for the third time, in *Advocate Christ Med. Ctr. v. Becerra* (interpreting SSI entitlement), following *Empire* (interpreting Part A entitlement), and *Allina II* (addressing a procedural question on CMS's equating of Part C participation as Part A entitlement).

40.    The 2023 Part C Days Final Rule is the Secretary's finalized remedy offered after her loss in *Allina II*.  In it, the Secretary promulgated a payment rule interpreting patient days for which patients were entitled to Part A benefits to include patient days for which patients were enrolled in a Part C plan. The rule was made retroactive to cover the period of time at issue in *Allina II*, during which there was no rule governing the treatment of Part C Days. The retroactive Final Rule is applicable to all discharges occurring prior to October 1, 2013—the date on which the same Part C Days policy already took effect prospectively, under the FFY 2014 IPPS Final Rule.

41.    Reviewing the DSH Statute, federal courts have effectively concluded that Congress used the terms "entitled" and "eligible" interchangeably and without meaningful

distinction. *See Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 12-13 (D.C. Cir. 2011) (noting that "the usual rule that Congress intends different meanings when it uses different words has little weight here …. [I]t would be a mistake to read too much into the difference in nomenclature") (collecting cases).

42.    Prior to October 1, 2004, the Secretary construed the term "entitled" in the DSH statute to mean that a patient was "entitled to benefits under Part A" of Medicare when Medicare Part A covered and paid for the patient's hospitalization. For days not covered by Part A, the patient was deemed not to be "entitled to" Part A Medicare benefits for purposes of the DSH calculation. This included days covered by a Part C plan, days for which Medicare was secondary to another insurer, or days when the patient's spell of illness exceeded 90 days such that his Part A benefits were exhausted. *See* 42 C.F.R. § 412.106(b)(2)(1)(2003); *see also* 51 Fed. Reg. 16,772, 16,788 (May 6, 1986); 51 Fed. Reg. 31,454, 31,460-61 (Sept. 3, 1986). These days were excluded from the numerator and denominator of the Medicare fraction. If the person was eligible for Medicaid—which the vast majority of SSI Enrollees are—then these Part A non-covered days would be counted in the numerator of the Medic*aid* fraction. *See Presbyterian Med. Ctr. of Philadelphia v. Aetna Life Ins. Co.*, CMS Adm'r Dec., 96-D75, MEDICARE & MEDICAID GUIDE (CCH) ¶45,032 (Nov. 29, 1996). As a result, virtually all SSI Enrollees were counted in the low-income patient population of either the Medicare or Medicaid fractions.

43.    In 2003, however, the Secretary proposed to change the interpretation of the DSH statute in 68 Fed. Reg. 27,154, 27,201-08 (May 19, 2003), despite there having been no change in the underlying statute. In that notice of proposed rulemaking, the Secretary erroneously stated that the then-current policy required all Part A days to be counted in the Medicare fraction even

after a Medicare beneficiary exhausted his or her Part A benefits—and thus be excluded from the Medicaid fraction numerator even if the patient was eligible for Medicaid.

44.    The Secretary did not act upon this proposal in the final IPPS rule for federal fiscal year (FFY) 2004.  68 Fed. Reg. 45,346, 45,422 (Aug. 1, 2003). But a year later, for FFY 2005, the Secretary reversed course and adopted what he then acknowledged was a new policy: to include Part A Exhaust days in the Medicare fraction. 69 Fed. Reg. 48,916, 49,098-99 (Aug. 11, 2004) (acknowledging that the Secretary had never before counted Part A exhaust days in the Medicare fraction and explaining the misstatement he had made in the proposed rulemaking of May 19, 2003.  In the Final Rule, the Secretary announced for the first time that Medicare Advantage (Part C) days would also be counted in the Medicare fraction.

45.    The Secretary effected this change by striking the word "covered" from the existing Medicare fraction regulation, reflecting a fundamental change to the construction of the term "entitled" to benefits. *Compare* 42 C.F.R. § 412.106(b)(2)(i) (2003) *with* 42 C.F.R. § 412.106(b)(2)(i) (2005); *see also* 69 Fed. Reg. 48,916, 49,246 (Aug. 11, 2004).

46.    In the summer of 2007, without providing notice or the opportunity to comment, the Secretary issued a technical correction to the regulation regarding CMS' policy on Medicare Advantage days. Specifically, the Secretary amended the DSH regulation to conform the text to effectuate the "policy change" announced in the FFY 2005 rulemaking, 72 Fed. Reg. 47,130, 47,384 (Aug. 22, 2007), to provide that the Medicare fraction included all patient days for "patients entitled to Medicare Part A (or Medicare Advantage (Part C))." 42 C.F.R. §§ 412.106(b)(2)(i)(B) and (iii)(B).  The stated effective date for the FFY 2007 IPPS Final Rule was October 1, 2007.  72 Fed. Reg. at 47,130.

47.    The Secretary's FFY 2004 and 2005 rules did not expressly address the Agency's treatment of days attributable to Medicare Part A beneficiaries whose Part A benefits were subject to Medicare Secondary Payer limitations, *i.e.*, whose healthcare services are not paid by Medicare because Medicare is secondary to a group health insurer or a third-party payer. However, in its FFY 2006 IPPS Final Rule, the agency noted it had "updated . . . [42 C.F.R.] § 412.106(b) to reflect the inclusion [in the Medicare Part A fraction] of days for which Medicare was not the primary payer." 70 Fed. Reg. 47,287, 47,441 (Aug. 12, 2005).

48.    None of these amendments discussed the broader impact of the changing definition of "entitled" to Part A benefits or any corollary change to the definition of "entitled" to SSI benefits.

49.    In 2008, this Court issued its memorandum opinion and order in *Baystate Medical Center v. Leavitt,* 545 F. Supp. 2d 20, *amended by* 587 F. Supp. 2d 37 (D.D.C. 2008), which required the Secretary to correct several systemic errors in her calculation of the Medicare fraction that uniformly deflated the numerator of the fraction (SSI Days), and inflated the denominator, thus reducing the fraction overall and, as a result, reducing the DSH payments made to hospitals.

50.    In April 2010, without advance notice to the public and without affording hospitals an opportunity for comment, the Secretary issued CMS Ruling 1498-R, which: (1) directed the Board to remand to the MACs all pending DSH appeals that raised issues similar to those in *Baystate*; (2) directed CMS to re-compute and publish hospitals' updated Medicare fractions using the revised SSI-data matching process mandated in *Baystate*; and (3) directed the MACs to use the newly published Medicare fractions to settle all remanded cost reporting

periods, including those preceding the October 1, 2004 effective date of the amendment.  *See* CMS Ruling No. CMS-1498-R (April 28, 2010).

51.    One month later, on May 4, 2010, the Secretary proposed further amendment to the DSH regulation to obviate any confusion made by the prior changes: "In order to further clarify our policy that patient days associated with [Part C] beneficiaries are to be included in the [Medicare] fraction because they are still entitled to benefits under Medicare Part A, we are proposing to replace the word 'or' with the word 'including' in [42 C.F.R.] § 412.106(b)(2)(i)(B) and § 412.106(b)(2)(iii)(B)." *See* 75 Fed. Reg. 24,000, 24,006-07.

52.    The amendment to the regulation was adopted in the FFY 2011 IPPS Final Rule without modification, *see* 75 Fed. Reg. 50,275, 50,286 (Aug. 16, 2010), resulting in multiple challenges to the amendment and its retroactive application. *See, e.g., Catholic Health Initiatives—Iowa Corp v. Sebelius*, 841 F. Supp. 2d 270 (D.D.C. 2012), *rev'd*, 718 F.3d 914 (D.C. Cir. 2014); *Metropolitan Hosp. v. United States Dep't of Health & Human Servs.*, 702 F. Supp. 2d 808 (W.D. Mich. 2010), *rev'd*, 712 F.3d 248 (D.C. Cir. 2013).

53.    Ultimately, the courts upheld the Secretary's new, expansive interpretation of the term "entitled" in the phrase "entitled to benefits under [P]art A" as meaning the patient met the "qualifying Medicare statutory criteria." *See, e.g., Catholic Health*, 718 F.3d at 919–20; *see also* CMS Ruling No. CMS-1498-R2 at 1–10 (Apr. 22, 2015); *Becerra v. Empire Health Foundation*, 142 S. Ct. 2354 (2022) (reversing the Ninth Circuit's contrary holding, and finding the plain language of the statute compelled the agency's interpretation as to Part A beneficiaries' non-covered days, while remaining silent on the decision's impact on treatment of Part C days).

54.    Despite the Secretary's wholesale expansion of the meaning of "entitled to benefits under Medicare [P]art A" to include covered and non-covered inpatient days, the

Secretary continues to construe the term "entitled to [SSI] benefits" narrowly, to require a cash stipend paid by SSA for the month of hospitalization. The Secretary has continued to exclude from its count of SSI Days those SSI Enrollees who did not receive the stipend for the month of their inpatient hospitalizations. 75 Fed. Reg. 50,275-286 (Aug. 16, 2010); *see Metropolitan Hosp.*, 712 F.3d at 263–65. This is true even when the SSI Enrollee should have received a cash payment but did not for various administrative reasons.

55.    Under the SSI statute, however, every aged, blind or disabled individual whose income and resources meet the annual statutory criteria are SSI-qualified and entitled to SSI program benefits "in accordance with and subject to the provisions of" Title XVI, including the program's various and detailed payment-eligibility provisions. *See* 42 U.S.C. §§ 1381a & 1382.

56.    To further support beneficiaries under age 65 who want to work, SSI has always included a vocational rehabilitation program under title XVI. *See* 42 U.S.C. § 1382d. Vocational rehabilitation services include physical rehabilitation, assistive technology, vocational training, and a variety of other "goods and services" that assist with employment. *See* 20 C.F.R. § 416.2214(b). Blind or disabled SSI beneficiaries remain eligible for vocational-rehabilitation services even when monthly cash payments under §§ 1382 and 1382h(a) are suspended. *Id*. § 1382d(e)(2); *see also* 20 C.F.R. §§ 411.155, 416.2215. Moreover, participation in vocational rehabilitation may extend access to certain cash benefits that otherwise would be suspended or terminated. 42 U.S.C. § 1383(a)(6).

57.    Another non-cash benefit for SSI enrollees in the 42 states where the income and resource thresholds for SSI and Medicaid program participation are the same, is continued Medicaid eligibility for periods when the beneficiary is participating in vocational rehabilitation training—another non-cash benefit granted under 42 U.S.C. § 1382d—and earns monthly

income above the payment-eligibility threshold. 42 U.S.C. § 1382h. Even when that beneficiary no longer qualifies for a monthly SSI stipend for a month, the beneficiary does not lose Medicaid coverage for that month.

58.    Another benefit of SSI enrollment for Medicare beneficiaries is fully subsidized Medicare Part D prescription drug benefits, irrespective of whether that SSI Enrollee receives a monthly cash stipend from SSA.  *See* 42 C.F.R. § 423.773 and 20 C.F.R. § 418.3105.  Because SSI Days include only patients who participate in both the SSI and Medicare programs for purposes of the DSH statute, the Part D benefit applies to all SSI Enrollees at issue in this appeal.

59.    The Secretary considers an SSA award letter to be sufficient evidence that the Medicare beneficiary is an "SSI recipient" to qualify him for a full Medicare Part D prescription drug benefit subsidy. Centers for Medicare and Medicaid Services, Find Your Level of Extra Help    (Part    D),    https://www.medicare.gov/your-medicare-costs/help-paying-costs/extra-help/level-of-extra-help.html; CMS Manual 100-18, Chapter 13, Premium and Cost-Sharing Subsidies for Low-Income Individuals, at §§ 40.2.2, 40.2.5.

60.    Because the Secretary counts Part A days by interpreting benefit entitlement to mean all Medicare beneficiaries regardless of payment or receipt of Part A program benefits for the inpatient days at issue, the Secretary must similarly count SSI Days by interpreting benefit entitlement to mean all SSI Enrollees regardless of payment or receipt of SSI program benefits for the month of hospitalization.

61.    The Secretary's directive to include only those SSI Enrollees who receive an SSI payment for the month in which they are hospitalized runs contrary to both the plain language of the DSH statute as interpreted by the Supreme Courtin *Empire*, and Congress's stated intent to have Medicare-entitled SSI Enrollees serve as a proxy for low-income patients.

62.    The Secretary's incorrect and improper construction of the term "entitled" to SSI benefits thwarts Congress's intent and denies the Plaintiffs the reimbursement to which they are entitled.

## MEDICARE APPEALS PROCESS

63.    MACs are private insurance companies that perform certain Medicare audit and payment functions under contracts with CMS. As is relevant here, MACs determine payment amounts due the hospitals under Medicare law and regulations. 42 U.S.C. § 1395h, 42 C.F.R. § 413.20.  MACs review the cost report, determine the total amount of Medicare reimbursement due the provider, and issue the provider a Notice of Program Reimbursement (**NPR**).  *See* 42 C.F.R. § 405.1803.

64.    A provider dissatisfied with the MAC's final determination, or revised final determination, of total reimbursement may file an appeal with the Board within 180 days of the issuance of the NPR or RNPR.  42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835.

65.    Pursuant to 42 U.S.C. § 1395oo(a) and (b) and 42 C.F.R. §§ 405.1835 and 405.1837, a hospital may file an appeal to the Board individually if the amount in controversy is $10,000 or more, or may file a group appeal of an issue that is common to two or more hospitals if the aggregate amount in controversy is $50,000 or more.

66.    The Board is required to apply all statutes, regulations, and orders applicable to the Medicare program. 42 U.S.C § 1395oo.  When a provider challenges the validity of a statute, regulation, or order through a jurisdictionally proper appeal, the Board is required to grant expedited judicial review (**EJR**) of the matter, permitting the provider to raise their claims in federal court without the need for an administrative hearing.  42 U.S.C. § 1395oo(f)(1).

**FACTUAL BACKGROUND RELEVANT TO**
**PLAINTIFFS' ADMINISTRATIVE APPEALS**

67.     The Plaintiffs timely appealed their RNPRs to the Board, arguing that their revised DSH adjustments were understated because the Secretary categorically excluded from the revised Medicare fraction numerator all SSI Days for Part A (including Part C) beneficiaries who were SSI Enrollees but who did not receive an SSI payment for the month of hospitalization, contrary to the language of the DSH statute.

68.     In issue statements filed with their appeals to the Board, the Plaintiffs stated that the Secretary's narrow interpretation of entitlement to SSI benefits, and the resulting undercount of SSI Days, conflicts with the DSH statute's plain language, meaning and intent.

69.     As stated in the 2023 Part C Days Final Action, which reiterates the FFY 2011 Final Rule cited therein, the Secretary continued to (erroneously) rely on three SSA payment codes (C01, M01, and M02), and excludes several dozen others, to determine whether Medicare inpatients (whether enrolled in Part A or a Part C plan) were entitled to SSI benefits during their hospitalization.  This policy categorically excludes from total SSI Days many patients who were low-income SSI Enrollees, often for administrative reasons wholly unrelated to their SSI payment eligibility. For example, the Secretary's policy excludes SSI Enrollees whose checks are temporarily held because SSA is uncertain of their current address or the identity of their representative payee, and new SSI Enrollees in their first month of program participation (a payment exception created in 1996 that does not impact their program eligibility). *See* 75 Fed. Reg. at 50,275, 50,280 (Aug. 16, 2010).

70.     Additionally, the Secretary's interpretation of SSI benefit entitlement ignores the importance of non-cash program benefits, including vocational rehabilitation services, continued Medicaid eligibility during times of SSI-payment ineligibility, and automatic and fully

subsidized enrollment in the Part D Extra Help program. The incongruity with which these other SSI program benefits are treated vis-à-vis Medicare Part A benefits for purposes of the DSH payment calculation is evidenced by, among other things, the Secretary's inclusion of Part C days as Part A days, even though Part C enrollment replaces Part A (and Part B) coverage. *See* 75 Fed. Reg. at 50,275–86 (Aug. 16, 2010).

71.    The Secretary's unlawful exclusion of certain SSI Enrollees' patient days from the Medicare Fraction numerator has a dramatic impact on the Plaintiffs' DSH adjustments, as demonstrated through SSA data showing that more than one million SSI Enrollees are subject to payment suspensions of varying lengths in any given year. Because the Secretary deems these beneficiaries not entitled to SSI benefits, their patient days are excluded from total SSI Days if they are hospitalized during a month of suspended payment.

72.    In each of the Board's *sua sponte* dismissals at issue, the Board concluded that it lacked subject matter jurisdiction to review the Plaintiffs' revised DSH payment calculations, finding that the Plaintiffs' appeal rights from the RNPRs are limited to the issue of the Secretary's treatment of Part C days in the Medicare Fraction. The Board failed to recognize that the Secretary moved Part C Days into both the numerator and denominator of the fraction, directly implicating the Secretary's unlawful method of counting SSI Days in the numerator. Accordingly, the Board had proper jurisdiction over the Plaintiffs' appeals of the SSI Eligible Days issue.

73.    The Board's dismissal decisions were received by counsel, on behalf of the Plaintiffs, between November 25 and 26, 2024. *See* **Exhibits 1 & 2**. The Plaintiffs' administrative rights have been exhausted, and this matter is now ripe for judicial review.

74.     This Complaint has been timely filed within 60 days of receipt of the Board's determinations, as required by 42 U.S.C. § 1395oo(f)(1).

## BASES OF APPEAL ON REVIEW

75.     The Medicare Act allows for judicial review of a final agency determination "pursuant to the applicable provisions under chapter 7 of title 5," of the APA. 42 U.S.C. § 1395oo(f)(1).

76.     The APA provides that the "reviewing court shall… hold unlawful and set aside agency action… found to be… (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;… (C) in excess of statutory jurisdiction, authority or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence[.]" 5 U.S.C. § 706(2).

77.     The APA further provides that the "reviewing court shall… compel agency action unlawfully withheld or unreasonably delayed[.]" § 706(1).

78.     In "any action in the nature of mandamus," district courts are authorized "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

## COUNT I: Violation of the APA and Medicare Act
### (Jurisdictional Dismissals)

79.     Plaintiffs repeat and reallege paragraphs 1–78 as if set forth fully herein.

80.     The Board's finding that it lacked jurisdiction because the Plaintiffs' appealed an issue that was not specifically revised in the appealed-from RNPRs must be set aside under § 706(2) because it is arbitrary, capricious, an abuse of discretion, not in accordance with law, and unsupported by substantial evidence.

81.     The Secretary's Part C Days Final Action addressed public comments raising concerns that the Secretary was further expanding the interpretation of Part A entitlement to include Part C days while continuing to interpret SSI entitlement narrowly.  Although the Secretary asserted that any re-evaluation of its methodology for counting SSI Days was outside the scope of the 2023 Part C Days Final Action, her discussion of it further demonstrates the inherent interrelatedness of these DSH appeal issues and the manner in which the implementation of the Part C days Final Rule necessarily implicates the full treatment of those days in both the numerator and denominator of the Medicare fraction.

82.     The Plaintiffs satisfied all jurisdictional requirements to pursue their appeals before the PRRB. Their appeal requests properly identified the cost reporting periods at issue, the date and a copy of the final determination, financial impact statements, issue statements, audit adjustments, and representation letters before the Board. Thus, the Board's dismissal of their properly filed appeals was invalid and must be set aside under § 706(2).

### COUNT II: Violation of the APA and Medicare Act
### (Misconstruction of the DSH Statute)

83.     Plaintiffs repeat and reallege paragraphs 1–82 as if set forth fully herein.

84.     The Secretary's construction of the DSH statute since 2004 draws a baseless distinction between the Medicare and SSI programs. Under the current construction of the DSH statute, the Secretary maintains, and the Supreme Court has confirmed, that the phrase "entitled to benefits under part A" is a term of art that broadly encompasses days for which Medicare Part A makes no payment, including Medicare Exhaust days, Medicare Secondary Payer days and Medicare Part C days.  That broad interpretation of entitlement to program benefits must apply equally to those Medicare beneficiaries who are also "entitled to [SSI] benefits," *i.e.*, SSI Enrollees.

85.    SSI Enrollees meet the qualifying statutory criteria for SSI program eligibility on the basis of their annual income and resources and their age or disability. *See* 42 U.S.C. §§ 1381a & 1382.  When the Secretary moved Part C Days into the Medicare fraction, he made two decisions: whether to include these days in the denominator as Part A entitlement days, and whether to include them in the numerator as SSI entitlement days. Both issues are appealable from the RNPRs issued in connection with the 2023 Part C Days Final Rule.

86.    The availability of both issues within the scope of an appeal is further supported by CMS's Change Request 13294, which implemented the 2023 Part C Days Final Action and instructed MACs to recalculate providers' DPP, which is the sum of the Medicare Fraction and Medicaid Fraction.  Consequently, the entire SSI ratio was impacted by the Part C Days Final Action, anchoring in the RNPRs the Plaintiffs' rights to appeal any aspect of the DPP, including the SSI Eligible Days issue, as applied not only to the Part C Days that were newly added to the fraction, but to the entire Medicare fraction that was revised.

87.    All Medicare beneficiaries who are also SSI Enrollees, including those who did not receive an SSI cash payment for the month during which they were hospitalized, are entitled to program benefits, including non-cash benefits, regardless of whether they receive a cash stipend in a particular month, and their inpatient hospital days must be counted as SSI Days.

88.    Because the Secretary's conflicting interpretations of the term "entitled" to program benefits contravenes the Medicare DSH Statute and frustrates Congressional intent, it violates the rules of statutory interpretation under *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), and is thus "not in accordance with law" and must be set aside under 5 U.S.C. § 706(2).

## COUNT III: Mandamus under § 1361
### (MMA § 951 requirement to furnish SSI eligibility data)

89.     Plaintiffs reallege and reincorporate paragraphs 1–88 above as if set forth fully herein.

90.     In addition to erroneously construing the DSH statute to systematically reduce the number of counted SSI Enrollees, the Secretary has also violated MMA § 951 (42 U.S.C. § 1395ww note), which requires her to provide the Plaintiffs with all information needed to calculate the DSH computation:

> Beginning not later than 1 year after the date of the enactment of this Act, **the Secretary shall arrange to furnish** to subsection (d) hospitals (as defined in section 1886(d)(1)(B) of the Social Security Act, 42 U.S.C. 1395ww(d)(1)(B)) **the data necessary for such hospitals to compute the number of patient days used in computing the disproportionate patient percentage** under such section for that hospital for the current cost reporting year. Such data shall also be furnished to other hospitals which would qualify for additional payments under part A of title XVIII of the Social Security Act on the basis of such data.

MMA § 951, Pub. L. No. 108-173, 117 Stat. 2066 (Dec. 8, 2003) (emphasis added).

91.     As made clear in the FFY 2011 rulemaking, the Secretary has access to Medicare patients' SSI eligibility data, including the payment codes, but has refused to release the data to hospitals after multiple Freedom of Information Act requests, citing contractual and privacy considerations. *See also* 70 Fed. Reg. 47,438–51 (Aug. 12, 2005).

92.     Hospitals have unsuccessfully sought to obtain relevant data from alternative sources, including CMS and SSA, to establish an approximate measure of the number of Medicare patients who are SSI Enrollees omitted from the Secretary's count of SSI Days.

93.     The Secretary must give the Plaintiffs access to the SSI enrollment data that is furnished to the Secretary by the SSA.  Section 951 of the MMA required HHS to arrange by

December 8, 2004 to furnish providers with the data necessary to compute the number of patient days used in calculating their DPP.

94.     The requirements of Section 951 may be satisfied only by giving providers access to the SSI enrollment files made available to the Secretary from the SSA, including the assigned SSI payment code for all of a hospital's Medicare patients who are SSI Enrollees. No legal remedies exist to compel the disclosure; accordingly, the Plaintiffs may seek relief by way of a writ of mandamus.

95.     As a result of the Secretary's refusal to make the required disclosure, the Plaintiffs have been harmed by way of their reduced DPPs and resulting reduced Medicare payments. Specifically, the Plaintiffs have been deprived of the tools required to establish that the Secretary is underreporting the patient days in their low-income proxy, including SSI Days, which results in lower DSH adjustments.

96.     Plaintiffs are therefore entitled to a writ of mandamus pursuant to 28 U.S.C. § 1361, directing the Secretary to furnish such data relating to SSI Enrollees that are excluded from the SSI Days count because they are assigned one of the other several dozen payment codes that indicate a temporary suspension of SSI cash payments.

**COUNT IV: Failure to Act under § 706(1)**
**(MMA § 951 requirement to furnish SSI eligibility data)**

97.     Plaintiffs incorporate by reference paragraphs 1–96 as though fully set forth herein.

98.     Under 5 U.S.C. § 706(1), the "reviewing court shall … compel agency action unlawfully withheld or unreasonably delayed." Agency action is "unlawfully withheld" where the law makes "a specific, unequivocal command," and the requirement is for a "precise, definite

act about which an official had no discretion whatever." *Norton v. S. Utah Widerness All.*, 542 U.S. 55, 63 (2004) (cleaned up); *Skalka v. Kelly*, 246 F. Supp. 3d 147 (D.D.C. 2017).

99.    More than 20 years ago, MMA § 951 compelled the Secretary to furnish hospitals with access to the data necessary to compute their SSI ratios.  He has unlawfully withheld the required access to data, and under § 706(1) should be directed to comply with her statutory obligation.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

a.    Declaring invalid and setting aside the Board's jurisdictional dismissal of the Plaintiffs' appeals;

b.    Retaining jurisdiction over this matter and finding that a remand to the Board would be futile because the Board lacks authority to hear the merits of the Plaintiffs' underlying regulatory challenges on appeal;

c.    Declaring invalid the Secretary's construction of the term "entitled to supplementary security income benefits" with respect to the composition of the Medicare fraction;

d.    Directing the Secretary to furnish the Plaintiffs with CMS data from the Social Security Administration to identify the payment codes of all SSI Enrollees who are deemed entitled to Part A benefits and who received inpatient hospital services from the Plaintiffs during the cost report years at issue;

c.    Directing the Secretary to recalculate all of the Plaintiffs' Medicare fractions to count all SSI Enrollees' patient days as SSI Days in the numerator of the Medicare fraction;

e.    Requiring the Secretary to pay interest on the amount due to the Plaintiffs pursuant to 42 U.S.C. § 1395oo(f)(2); and

f.      Providing such other relief as the Court may deem proper and just.

Dated January 23, 2025.

Respectfully Submitted,

/s/ Daniel F. Miller
Daniel F. Miller, D.C. Bar No. WI0032
Heather D. Mogden, D.C. Bar No. WI0039
HALL, RENDER, KILLIAN, HEATH & LYMAN, P.C.
330 East Kilbourn Avenue, Suite 1250
Milwaukee, WI  53202
Telephone:    (414) 721-0478
Facsimile:      (414) 721-0491
Email:  dmiller@hallrender.com
Email:  hmogden@hallrender.com

*Attorneys for Plaintiffs*

4918-1067-5719v2