UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BAPTIST HEALTHCARE SYSTEM, INC.
d/b/a BAPTIST HEALTH FLOYD, *et al.*,

        Plaintiffs,

    v.

ROBERT F. KENNEDY JR.,[1] in his official
capacity as SECRETARY OF HEALTH AND
HUMAN SERVICES,

        Defendant.

Civil Action No. 25-205 (AHA)

**DEFENDANT'S MOTION TO DISMISS COUNTS II THROUGH IV OF
THE COMPLAINT AND TO STAY DEFENDANT'S ANSWER DEADLINE**

---

[1]    Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Robert F. Kennedy Jr. is automatically substituted as a defendant in place of his predecessor in office.

# TABLE OF CONTENTS

Table of Contents .................................................................................................................. i

Table of Authorities ............................................................................................................. ii

Background ........................................................................................................................... 2

    I.     Statutory and Regulatory Background ...................................................................... 2

    II.    Factual and Procedural Background ......................................................................... 8

Legal Standards .................................................................................................................. 10

Argument ............................................................................................................................ 11

    I.     Plaintiffs Failed to Exhaust Their Administrative Remedies for the Claim
          Underlying Count II .............................................................................................. 11

    II.    Counts III and IV Should Be Dismissed for Lack of Jurisdiction and Failure to
          State a Claim ......................................................................................................... 15

          A.     Plaintiffs Have Not Shown That They Have a Clear Right to the Relief
                 Sought or That There Is a Clear Non-Discretionary Duty Enforceable in
                 Mandamus ................................................................................................. 17

          B.     Plaintiffs Have Not Shown That They Exhausted All Other Avenues for
                 Relief and That There Are No Alternative Remedies Available ............. 20

          C.     Plaintiffs Fail to Identify Compelling Equitable Grounds for Mandamus
                 Relief ........................................................................................................ 21

          D.     In the Alternative, Counts III and IV Should Be Dismissed for Failure to
                 State a Claim Because the Legal Issue Underlying Those Counts Has
                 Already Been Resolved in the Secretary's Favor by the D.C. Circuit...... 22

    III.   The Court Should Hold in Abeyance Defendant's Obligation to Respond to the
          Remaining Counts for Thirty Days After Ruling ................................................. 24

Conclusion .......................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Action Alliance of Senior Citizens v. Leavitt*, 483 F.3d 852 (D.C. Cir. 2007) ............................. 13

*Adena Regional Medical Center v. Leavitt*, 527 F.3d 176 (D.C. Cir. 2008) ................................. 3

*Advocate Christ Medical Center v. Becerra*, 80 F.4th 346 (D.C. Cir. 2023) ................... 19, 20, 23

*Advocate Christ Medical Center v. Kennedy*, 145 S. Ct. 1262 (2025) ........................ 7, 12, 15, 24

*Allina Health Services v. Sebelius*, 746 F.3d 1102 (D.C. Cir. 2014) .............................................. 6

*Allina Health Services v. Sebelius*, 904 F. Supp. 2d 75 (D.D.C. 2012) ......................................... 5

*American Hospital Association v. Azar*, 895 F.3d 822 (D.C. Cir. 2018) ....................................... 13

*American National Insurance Co. v. FDIC*, 642 F.3d 1137 (D.C. Cir. 2011) .............................. 10

*Association of American Medical Colleges v. Califano*, 569 F.2d 101 (D.C. Cir. 1977) ............. 13

*Azar v. Allina Health Services*, 587 U.S. 566 (2019) .................................................................... 6

*Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20 (D.D.C. 2008) ............................... 19, 23

*Becerra v. Empire Health Foundation, for Valley Hospital Medical Center*, 597 U.S. 424 (2022)

............................................................................................................................................ 4, 6, 7

*Bond v. U.S. Department of Justice*, 828 F. Supp. 2d 60 (D.D.C. 2011) ..................................... 16

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) .................................................................. 10

*Cape Cod Hospital v. Leavitt*, 565 F. Supp. 2d 137 (D.D.C. 2008) ............................................ 14

*Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914 (D.C. Cir. 2013) ..................... 3

*Citizens for Responsibility & Ethics in Washington v. SEC*, 916 F. Supp. 2d 141 (D.D.C. 2013)18

*Citizens for Responsibility & Ethics in Washington v. Trump*, 302 F. Supp. 3d 127 (D.D.C. 2018)

.......................................................................................................................................... 19

*Empire Health Foundation v. Burwell*, 209 F. Supp. 3d 261 (D.D.C. 2016) .............................. 13

*Good Samaritan Hospital v. Shalala*, 508 U.S. 402 (1993) .......................................................... 3

*Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9 (D.D.C. 2001).... 10

*Haase v. Sessions*, 835 F.2d 902 (D.C. Cir. 1987) ...................................................... 10

*Heckler v. Ringer*, 466 U.S. 602 (1984) .............................................................. 13, 17

*Illinois v. Ferriero*, 60 F.4th 704 (D.C. Cir. 2023) ....................................................... 16

*In re Cheney*, 406 F.3d 723 (D.C. Cir. 2005) .............................................................. 16

*Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994)............................. 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................... 10

*Maine Medical Center v. Burwell*, 841 F.3d 10 (1st Cir. 2016) ........................................... 2

*Metropolitan Hospital v. U.S. Department of Health & Human Services*, 712 F.3d 248 (6th Cir. 2013) ............................................................................................................. 3

*Mirv Holdings, LLC v. GSA*, 454 F. Supp. 3d 33 (D.D.C. 2020) .................................... 11

*Monmouth Medical Center v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001) ................................... 17

*Morrow v. United States*, 723 F. Supp. 2d 71 (D.D.C. 2010)........................................... 10

*National Shooting Sports Foundation v. Jones*, 840 F. Supp. 2d 310 (D.D.C. 2012)................. 16

*Nunes v. WP Co. LLC*, 513 F. Supp. 3d 1 (D.D.C. 2020)........................................... 10, 11

*Power v. Barnhart*, 292 F.3d 781 (D.C. Cir. 2002) ....................................................... 16

*Ramirez v. Blinken*, 594 F. Supp. 3d 76 (D.D.C. 2022)................................................... 16

*Rhode Island Hospital* v. *Leavitt*, 548 F.3d 29 (1st Cir. 2008)................................... 2, 3

*Sebelius v. Auburn Regional Medical Center*, 568 U.S. 145 (2013) .................................. 17, 20

*Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000)........................... 11, 14

*Thomas v. Principi*, 394 F.3d 970 (D.C. Cir. 2005) .................................................... 10

*Three Lower Counties Community Health Services Inc. v. HHS*, 517 F. Supp. 2d 431 (D.D.C. 2007) .................................................................................................. 13, 14, 15

*Walpin v. Corp. for National & Community Service*, 718 F. Supp. 2d 18 (D.D.C. 2010) ........... 19

*Weinberger v. Salfi*, 422 U.S. 749 (1975)................................................................. 11, 13

*Wilbur v. United States*, 281 U.S. 206 (1930) ....................................................... 18, 19

*Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449 (1999) ................................. 17

**Statutes**

28 U.S.C. § 1331 .................................................................................................... 11, 12

28 U.S.C. § 1361 .................................................................................................... passim

42 U.S.C. § 1381 .......................................................................................................... 4

42 U.S.C. § 1395 .......................................................................................................... 1

42 U.S.C. § 1395c .......................................................................................................... 2

42 U.S.C. § 1395f(b)(1) (1982) ..................................................................................... 2

42 U.S.C. § 1395h(a) ..................................................................................................... 3

42 U.S.C. § 1395i–6 ...................................................................................................... 2

42 U.S.C. § 1395ii ....................................................................................................... 11

42 U.S.C. § 1395*lll* ..................................................................................................... 1

42 U.S.C. § 1395oo(a) ............................................................................................... 14

42 U.S.C. § 1395oo(a)(1) ............................................................................................. 7

42 U.S.C. § 1395oo(a)(3) ............................................................................................. 7

42 U.S.C. § 1395oo(b) ............................................................................................. 7, 14

42 U.S.C. § 1395oo(c) ................................................................................................. 8

42 U.S.C. § 1395oo(d) ................................................................................................. 8

42 U.S.C. § 1395oo(f)(1) .................................................................................... passim

42 U.S.C. § 1395w–21(a)(3) ....................................................................................... 5

42 U.S.C. § 1395ww(d)(1)-(4) ........................................................................... 3

42 U.S.C. § 1395ww(d)(1)-(4) (Supp. I 1983) ................................................. 2

42 U.S.C. § 1395ww(d)(5)(F)(i)(I) ..................................................................... 3

42 U.S.C. § 1395ww(d)(5)(F)(v)-(vii) ................................................................ 3

42 U.S.C. § 1395ww(d)(5)(F)(vi) ........................................................................ 5

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I) .................................................................. 4

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II) ................................................................. 4

42 U.S.C. § 402 ...................................................................................................... 2

42 U.S.C. § 405(h) ......................................................................................... 11, 17

42 U.S.C. § 426(a) ................................................................................................ 2

42 U.S.C. 1395x(v)(1)(A) (1982) ....................................................................... 2

5 U.S.C. § 552 ..................................................................................................... 21

5 U.S.C. § 706(1) ......................................................................................... 16, 24

Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173,

    title IX, § 951, 117 Stat. 2066 ............................................................... passim

Social Security Amendments of 1983, Pub. L. No. 98-21, 97 Stat. 65 .......................................... 2

**Rules**

Federal Rule of Civil Procedure 12(a)(4) ........................................... 1, 24, 25

Federal Rule of Civil Procedure 12(b)(6) ................................................... 23

**Regulations**

42 C.F.R. § 405.1801(b)(1) .................................................................................. 3

42 C.F.R. § 405.1803 ........................................................................................... 5

42 C.F.R. § 405.1835 ........................................................................................... 7

42 C.F.R. § 405.1867 ............................................................................................................... 14

42 C.F.R. § 405.1877 ............................................................................................................... 14

42 C.F.R. § 405.1885(a)(5) ...................................................................................................... 14

42 C.F.R. § 405.1889 ........................................................................................................... 9, 14

42 C.F.R. § 405.1889(b)(1) .................................................................................................. 7, 14

42 C.F.R. § 405.1889(b)(2) ........................................................................................................ 7

42 C.F.R. § 412.106(b)(2) .......................................................................................................... 4

42 C.F.R. § 412.106(b)(4) .......................................................................................................... 5

42 C.F.R. § 412.106(b)(5) .......................................................................................................... 5

42 C.F.R. § 412.106(c) ............................................................................................................... 5

42 C.F.R. § 413.24(f) ................................................................................................................. 3

51 Fed. Reg. 31,454 (Sept. 3, 1986) .......................................................................................... 4

69 Fed. Reg. 48,916 (Aug. 11, 2004) ......................................................................................... 5

70 Fed. Reg. 47,278 (Aug. 12, 2005) .......................................................................... 17, 18, 20

75 Fed. Reg. 50,042 (Aug. 16, 2010) .......................................................................... 19, 20, 24

78 Fed. Reg. 50,496 (Aug. 19, 2013) ......................................................................................... 5

88 Fed. Reg. 37,772 (June 9, 2023) ........................................................................................ 6, 7

The Medicare statute, 42 U.S.C. §§ 1395-1395*lll*, requires providers dissatisfied with the amount of their Medicare reimbursement to channel any disputes concerning that reimbursement through an administrative review process before obtaining judicial review. To do so, they must exhaust their administrative remedies by presenting their claim(s) for additional reimbursement to the Provider Reimbursement Review Board and obtaining a final decision on the merits of the claim(s) or a decision granting expedited judicial review over the claim(s). Plaintiffs here did not exhaust the claim underlying Count II of the Complaint, and this Court consequently lacks jurisdiction over it. This Court also lacks jurisdiction over the claim for mandamus relief underlying Counts III and IV of the Complaint because Plaintiffs' allegations in support of that claim fall far short of establishing *any* of the minimum jurisdictional prerequisites to such relief, let alone all of them. In addition, D.C. Circuit precedent has now resolved, in favor of the Secretary of Health and Human Services ("Secretary"), the legal issue underlying Plaintiffs' mandamus claim, such that Counts III and IV of the Complaint fail to state a claim upon which relief can be granted. Accordingly, the Secretary respectfully submits that the Court should dismiss Counts II through IV of the Complaint.[2]

In addition, to the extent the Court does not conclude that the Secretary's motion to dismiss Counts II through IV of the Complaint automatically tolls the time to respond to the Complaint under Federal Rule of Civil Procedure 12(a)(4), the Secretary respectfully moves to stay his deadline to answer the Complaint pending the Court's ruling on the instant motion to dismiss.

---

[2]     The Secretary is only seeking dismissal of Counts II through IV, and not Count I, of the Complaint because at this stage of the proceedings it is clear from the face of the Complaint and the attachments thereto only that those counts must be dismissed. If the Court agrees and dismisses those counts and plaintiffs continue to seek review of Count I of the Complaint, the parties may proceed to address that count, with the Secretary responding to it and then, assuming that count is properly before the Court, the parties proceeding to brief it via motions for summary judgment.

# BACKGROUND

## I.    Statutory and Regulatory Background

The Medicare statute establishes a federal health insurance program for the elderly and disabled. The Secretary administers the Medicare program through the Centers for Medicare & Medicaid Services ("CMS"), a component agency of the Department of Health and Human Services ("HHS"). Medicare Part A covers, among other things, inpatient hospital services furnished by providers to Medicare beneficiaries. *See* 42 U.S.C. §§ 1395c to 1395i–6. Entitlement to Part A benefits occurs automatically for individuals who turn 65 and are entitled to monthly Social Security benefits under 42 U.S.C. § 402. *See id.* § 426(a).

Prior to 1983, with certain exceptions, "the federal government reimbursed hospitals for the 'reasonable cost' of treating Medicare patients." *Maine Med. Ctr. v. Burwell*, 841 F.3d 10, 14 (1st Cir. 2016); *see* 42 U.S.C. § 1395f(b)(1) (1982). A hospital's "'reasonable cost'" of treating a patient was generally defined as "the cost the hospital 'actually incurred,' minus any portion of that cost" that Medicare "deemed 'unnecessary in the efficient delivery of needed health services.'" *Rhode Island Hosp.* v. *Leavitt*, 548 F.3d 29, 39 (1st Cir. 2008) (quoting 42 U.S.C. 1395x(v)(1)(A) (1982)). Although subject to various limitations, that approach to reimbursing hospitals led to "inordinately high" Medicare expenditures. *Id.*

In 1983, Congress replaced the retrospective, reasonable-actual-cost approach with "a prospective payment system." *Maine Med. Ctr.*, 841 F.3d at 14; *see* Social Security Amendments of 1983, Pub. L. No. 98-21, § 601(e), 97 Stat. 65, 152-57 (42 U.S.C. § 1395ww(d)(1)-(4) (Supp. I 1983)). Under that prospective payment system, "Medicare does not reimburse healthcare providers according to the costs they actually incur in treating Medicare patients." *Rhode Island Hosp.*, 548 F.3d at 31 n.1. Instead, the government pays "a hospital a fixed dollar amount for each Medicare patient it discharges on the basis of the patient's diagnosis, regardless of the actual cost

of the treatment provided." *Metro. Hosp.* v. *U.S. Dep't of HHS*, 712 F.3d 248, 250 (6th Cir. 2013) (citing *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 406 n.3 (1993)). Those fixed rates are designed to "reflect the resources an efficiently run hospital, in the same region, would regularly expend in treating a patient with the same diagnosis at time of discharge." *Rhode Island Hosp.*, 548 F.3d at 31 n.1. That approach "provides a powerful incentive for providers to maximize the efficiency of their treatment programs": a hospital that "treats a given patient for less than that predetermined rate" earns a profit, while a hospital that incurs costs above that rate faces a shortfall. *Id.* at 32 n.1.

Accordingly, hospitals generally are paid prospectively under the Inpatient Prospective Payment System ("IPPS") for the inpatient services they provide Medicare patients. Hospitals file annual cost reports with Medicare contractors, 42 U.S.C. § 1395h(a); 42 C.F.R. § 413.24(f), to determine the total amount of reimbursement due. *See* 42 C.F.R. §§ 405.1801(b)(1), 413.24(f). Under the IPPS, as noted, the Secretary generally pays hospitals based on prospectively determined rates. *See Adena Reg'l Med. Ctr. v. Leavitt*, 527 F.3d 176, 177 (D.C. Cir. 2008); 42 U.S.C. § 1395ww(d)(1)-(4). The IPPS also provides for certain payment adjustments based on various hospital-specific factors, including the disproportionate share hospital ("DSH") adjustment at issue here. The DSH adjustment provides extra payment to hospitals that "serve[] a significantly disproportionate number of low-income patients" on the theory that such patients are often in worse health and more costly to treat. 42 U.S.C. § 1395ww(d)(5)(F)(i)(I); *see also Cath. Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 916 (D.C. Cir. 2013).

As relevant here, a hospital's entitlement to a DSH adjustment and the amount of any such adjustment depends on the hospital's "disproportionate patient percentage" or "DPP." *See* 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vii). The DPP is calculated by adding together two statutorily

defined fractions, each of which represents a proxy measure of low income for some portion of the hospital's patient population in a given period. *See Becerra v. Empire Health Found., for Valley Hosp. Med. Ctr.*, 597 U.S. 424, 429-31 (2022). The "SSI fraction" measures the percentage of the hospital's Medicare patients that is low income by calculating the percentage of a hospital's patient days for patients "entitled to benefits under [Medicare] part A" that is attributable to patients who were also "entitled" to Supplemental Security Income ("SSI") benefits, *see id.* at 430 (quoting 42 U.S.C. § 1395ww(d)(5)(F)(vi)(I)), which are monthly cash benefits paid to certain individuals whose income and resources fall below certain limits, *see* 42 U.S.C. § 1381 *et seq*. The "Medicaid fraction" measures the percentage of the hospital's non-Medicare patients that is low income by calculating the percentage of total patient days attributable to patients who were *not* "entitled to benefits under [Medicare] part A" but who were eligible for medical assistance under a state Medicaid plan. *See id.* at 431 (quoting 42 U.S.C. § 1395ww(d)(5)(F)(vi)(II)).

Unlike other aspects of provider reimbursement, the SSI fraction is not calculated based on information submitted by the hospital in the cost report review process. Rather, CMS acquires the relevant data and calculates the fraction annually for each potentially DSH-eligible hospital nationwide. *See* 42 C.F.R. § 412.106(b)(2); *see also* 51 Fed. Reg. 31,454, 31,459 (Sept. 3, 1986) (DSH final rule) ("Recognizing the difficulty hospitals would have identifying their Medicare patients who are also SSI recipients, we have undertaken the task (and expense) of determining for each hospital the number of patient days of those dually entitled to Medicare Part A and SSI and have removed this burden from hospitals."). Those fractions are then posted on the CMS website. *See Disproportionate Share Hospital (DSH)*, CMS.gov, https://www.cms.gov/medicare/payment/ prospective-payment-systems/acute-inpatient-pps/disproportionate-share-hospital-dsh    (last visited May 13, 2025). The Medicaid fraction is calculated by the Medicare contractors using data

from each hospital's cost report, *see* 42 C.F.R. § 412.106(b)(4). The Medicare contractor adds the two fractions to calculate the DPP, then determines any DSH adjustment for the given period. *See id.* § 412.106(b)(5), (c). The Medicare contractor then determines the total amount of Medicare reimbursement due the provider, which it sets forth in a Notice of Program Reimbursement ("NPR"). *Id.* § 405.1803.

The DSH adjustment has been heavily litigated over many decades, with hospitals challenging numerous aspects of both the SSI and Medicaid fractions. One issue that has resulted in protracted litigation is CMS's treatment, in the SSI fraction calculation, of patient days attributable to individuals enrolled in Medicare Part C. Medicare Part C allows certain individuals who are entitled to benefits under Medicare Part A the option of receiving those benefits through an HMO, preferred provider organization, or other "managed care" plan. *See* 42 U.S.C. § 1395w–21(a)(3). The underlying interpretive question is whether individuals who enroll in Medicare Part C remain "entitled to benefits under [Medicare] part A" for purposes of the DSH calculation (the "Part C days issue"). *See id.* § 1395ww(d)(5)(F)(vi). In 2004, the Secretary addressed this issue through notice-and-comment rulemaking, finding that patients enrolled in Part C remain "entitled" to Part A benefits for purposes of the DSH calculation, and thus should be counted in the SSI fraction rather than the Medicaid fraction. *See* 69 Fed. Reg. 48,916, 49,099 (Aug. 11, 2004). This rule was vacated on procedural grounds, *Allina Health Servs. v. Sebelius*, 904 F. Supp. 2d 75, 91 (D.D.C. 2012), *aff'd in part, rev'd in part*, 746 F.3d 1102 (D.C. Cir. 2014), and while the case challenging that rule was on appeal, the Secretary promulgated another notice-and-comment rule prospectively re-adopting the same interpretation, *see* 78 Fed. Reg. 50,496, 50,614 (Aug. 19, 2013) (the "2013 Rule"). Ultimately, the case was remanded to the Secretary to consider the Part C days

issue anew (for years prior to those addressed by the prospective 2013 rule). *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014).

On remand, the Secretary attempted to address the Part C days issue through adjudication, rather than rulemaking, but this attempt was likewise invalidated in court on procedural grounds. Specifically, CMS published on its website fiscal year 2012 SSI fractions that included Part C days. Numerous hospitals challenged the publication of these fractions on procedural grounds. Ultimately, the Supreme Court sided with the hospitals, concluding that the published fractions amounted to a "statement of policy" subject to the Medicare statute's notice-and-comment provision and that notice-and-comment rulemaking was required "when the government establishes or changes an avowedly 'gap'-filling policy." *Azar v. Allina Health Servs.*, 587 U.S. 566, 571-72, 583-84 (2019) ("*Allina II*").

In response to the Supreme Court's decision, the Secretary undertook additional, retroactive notice-and-comment rulemaking. This culminated with the promulgation of a retroactive final rule that adopted, for periods prior to FY 2014 (FY 2014 and later periods having been addressed by the 2013 Rule), the same interpretation he had adopted previously, treating Part C enrollees as "entitled to benefits under [Medicare] part A" for DSH purposes. *See* 88 Fed. Reg. 37,772 (June 9, 2023) (the "2023 Rule"). The Secretary relied on both his retroactive rulemaking authority under 42 U.S.C. § 1395hh but also an intervening Supreme Court decision. *See Empire*, 597 U.S. 424. The *Empire* Court held, in a closely-related context, that the Secretary had "correctly" construed the operative statutory language, and that the statute disclosed a "surprisingly clear meaning—the one chosen by HHS." *Id.* at 434. Consistent with the agency's longstanding interpretation, the Court explained that a person is "entitled to benefits under [Medicare] part A" within the meaning of the DSH calculation if they meet the basic entitlement

criteria under 42 U.S.C. § 426. *See id.* at 434-36. Based on *Empire*, the Secretary determined that retroactive rulemaking was thus not necessary under *Allina II* to establish the substantive legal standard concerning beneficiaries enrolled in Part C. *See* 88 Fed. Reg. at 37,775. The Secretary also determined, in the alternative, that, to the extent a statutory "gap" might remain after *Empire*, retroactive rulemaking remained necessary to comply with *Allina II*. The 2023 Rule concerned the Part C days issue only and did not concern how to interpret the separate statutory phrase "entitled to [SSI] benefits."[3] *Id.* at 37,779 ("The meaning of 'entitled to [SSI] benefits' in the DSH statute is beyond the scope of this action.").

The statute and implementing regulations set forth an administrative review process available to providers dissatisfied with certain final Medicare reimbursement determinations, including applicable DSH adjustment calculations performed to arrive at those determinations. They may seek review, either individually or as a group with other providers, from the Provider Reimbursement Review Board ("Board"), an intra-agency tribunal, subject to certain amount-in-controversy requirements. *See* 42 U.S.C. § 1395oo(a)(1), (3), (b), (f)(1); 42 C.F.R. § 405.1835. Providers that "are under common ownership or control" or that have brought a group appeal to the Board under 42 U.S.C. § 1395oo(b) must, as a group, bring appeals to the Board "with respect to any matter involving an issue common to such providers." 42 U.S.C. § 1395oo(f)(1). If a reimbursement determination is later revised, that revised determination may also be appealed to the Board, but "[o]nly those matters that are specifically revised in [the] revised determination . . . are within the scope of any appeal of the revised determination," and "[a]ny matter that is not

---

[3]    Notably, the proper interpretation of that separate statutory phrase was the subject of the Supreme Court's recent decision in *Advocate Christ Medical Center v. Kennedy*, 145 S. Ct. 1262 (April 29, 2025).

specifically revised . . . may not be considered in any appeal of the revised determination . . . ." 42 C.F.R. § 405.1889(b)(1), (2). The Board holds a hearing and renders a decision, *see* 42 U.S.C. § 1395oo(c) & (d), which is subject to discretionary review by the CMS Administrator, *id.* § 1395oo(f)(1). A hospital may seek judicial review of "any final decision of the Board" or "any reversal, affirmance, or modification" thereof by filing suit in federal district court within sixty days. *Id.* In some circumstances, a hospital may bypass the Board hearing and obtain expedited judicial review if the hospital has a right to a Board hearing and the Board determines that it lacks authority to decide a "question of law or regulations relevant to the matters in controversy." *Id.*

## II.    **Factual and Procedural Background**

Plaintiffs are 60 hospitals that claim they are dissatisfied with the Medicare reimbursement amounts, related to inpatient care provided during various time periods between 2007 and 2014, that were determined by their Medicare contractors, and they thus appealed to the Board. Compl. ¶ 11, ECF No. 1; Compl. Ex. 3, ECF No. 1-3. Specifically, each Plaintiff sought to challenge revised NPRs the relevant Medicare contractors issued to them, pursuant to the 2023 Rule, at various points in March to June 2024. Compl. Ex. 3. In other words, Plaintiffs initially received NPRs that pre-dated the 2023 rule and subsequently received revised NPRs—that is, NPRs which had been revised to apply the 2023 rule. As already noted, the 2023 Rule concerned the Part C days issue and did not concern how to interpret the separate statutory phrase "entitled to [SSI] benefits" ("the SSI entitlement issue").[4] Plaintiffs allege that they filed with their administrative appeals of those revised NPRs issue statements in which they claimed that the Secretary's

---

[4]    The Secretary will refer to this Medicare reimbursement issue herein as the "SSI entitlement issue." Notably, Plaintiffs do not mention the Part C days issue in their description of the issue statements they filed with the Board when appealing from their revised NPRs, *see* Compl. Ex. 1 at 1-2; Compl. Ex. 2 at 1-2, even though it was that issue, not the SSI entitlement issue, that was the sole subject of the 2023 Rule that precipitated the issuance of those revised NPRs.

interpretation of that separate statutory phrase conflicted with the "plain language, meaning[,] and intent" of the Medicare statute. Compl. ¶ 68. In this way, from September through November 2024, Plaintiffs sought to raise the SSI entitlement issue at the Board in their group appeals of those revised NPRs, Compl. Ex. 3; ECF No. 1-3, but the Board dismissed those group appeals in two Notices of Dismissal dated November 25 and 26, 2024, Compl. Exs. 1 at 11 and 2 at 11; ECF Nos. 1-1 and 1-2. In dismissing the appeals, the Board reasoned that, because Plaintiffs were appealing from revised NPRs, their appeal rights were limited pursuant to 42 C.F.R. § 405.1889 "to appeal [only] issues or matters that were 'specifically revised' in the [revised ]NPR," Compl. Exs. 1 at 10 and 2 at 10, and, because those revised NPRs "ma[de] no changes at all to the Provider's payment or cost report related to [the SSI entitlement issue], . . . that issue is beyond the scope of any appeal from the [revised] NPR[s] . . . ," Compl. Exs. 1 at 11 and 2 at 11.

This lawsuit ensued. Plaintiffs seek to challenge the Board's dismissal of their various group appeals in Count I of the Complaint, Compl. ¶¶ 79-82; it appears, at least from the face of the Complaint and the attachments thereto, that Plaintiffs properly exhausted this issue and thus that Count I is properly before the Court. In Count II, Plaintiffs attempt to raise before this Court, on the merits, their challenge to the Secretary's interpretation of the statutory phrase "entitled to [SSI] benefits," an issue they claim to have raised in their Board appeals, *id.* ¶¶ 83-88, even though the Board dismissed their appeals related to that issue without addressing its merits. In Counts III and IV, Plaintiffs raise an additional related claim, asserting mandamus jurisdiction, concerning Section 951 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173, title IX, § 951, 117 Stat. 2066, 2427 ("Medicare Modernization Act § 951"). The Secretary now moves to dismiss Counts II through IV for lack of jurisdiction and Counts III and IV for failure to state a claim upon which relief can be granted.

**LEGAL STANDARDS**

"A motion for dismissal under 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'" *Morrow v. United States*, 723 F. Supp. 2d 71, 75 (D.D.C. 2010) (quoting *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987)). Because "[i]t is to be presumed that a cause lies outside [a federal court's] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), the plaintiff bears the burden of establishing that the Court has subject-matter jurisdiction, *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In assessing such a motion, a court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). A court need not, however, accept inferences that are unsupported by facts alleged in the complaint or that amount to mere legal conclusions. *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). Also, "the plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of the Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Nunes v. WP Co. LLC*, 513 F. Supp. 3d 1, 5 (D.D.C. 2020). The Court must construe the complaint in the plaintiff's favor and treat well-pleaded factual allegations as true but need not credit conclusory statements, legal conclusions cast as factual allegations, or inferences drawn by the plaintiff that are not supported by the facts alleged. *Id.*; *Mirv Holdings, LLC v. GSA*, 454 F. Supp. 3d 33, 41 (D.D.C. 2020).

**ARGUMENT**

Plaintiffs assert that this Court has jurisdiction over Counts II through IV of the Complaint pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. §§ 1331 and 1361. Compl. ¶¶ 8-9. Plaintiffs are wrong. Furthermore, Counts III and IV fail to state a claim upon which relief can be granted.

## I.    <u>Plaintiffs Failed to Exhaust Their Administrative Remedies for the Claim Underlying Count II</u>

Federal court jurisdiction over Medicare claims is extremely limited. Congress precluded federal question jurisdiction (under 28 U.S.C. § 1331) over "any claim arising under [the Medicare statute]," permitting judicial review only as provided in the Medicare statute.[5] 42 U.S.C. § 405(h); *see id.* § 1395ii (incorporating Section 405(h) into the Medicare statute); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000) ("We conclude that the statutory provision at issue, § 405(h), as incorporated by § 1395ii, bars federal-question jurisdiction here."). In this way, the statute "demands the 'channeling' of virtually all legal attacks through the agency." *Ill. Council*, 529 U.S. at 13. The requirement is "something more than simply a codification of the judicially developed doctrine of exhaustion, and may not be dispensed with merely by a judicial conclusion of futility." *Salfi*, 422 U.S. at 766. Only in the extremely narrow circumstance where applying the channeling requirement "to a particular category of cases" would "not lead to a channeling of review through the agency, but would mean no review at all" is federal question jurisdiction of claims arising under the Medicare statute permitted. *Ill. Council*, 529 U.S. at 17.

Federal question jurisdiction plainly is unavailable here. First, Plaintiffs do not allege that applying the channeling requirement to their claim in Count II (i.e., the Medicare-SSI entitlement

---

[5]    A claim "aris[es] under" the Medicare statute where the statute provides "both the standing and the substantive basis" for the claim. *Ill. Council* at 11-12 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 761 (1975)). Plaintiffs concede that their challenge "arises under" the Medicare statute. *See* Compl. ¶ 7.

issue) would mean no judicial review of that claim at all—indeed, they attempted to channel that claim through the Board, thus indicating their acknowledgment that it is subject to the channeling requirement. And while the Complaint and attachments thereto indicate that the Board dismissed the SSI entitlement issue below, Plaintiffs can seek, and indeed have sought (in Count I of the Complaint), judicial review of that dismissal decision. If, and only if, Plaintiffs were to obtain reversal of that dismissal decision (which, to be clear, they should not), they could return to the Board to seek a hearing and decision on the merits of the SSI entitlement issue. If they were still dissatisfied at that point—or, alternatively, if they sought and obtained expedited judicial review to bypass the Board hearing stage entirely—Plaintiffs would be able to bring that merits claim back to this Court (although what purpose this would serve is unclear, given that the Supreme Court recently decided the SSI entitlement issue in the Secretary's favor in *Advocate Christ*, 145 S. Ct. 1262). Of course, if the Court agrees with the Secretary that the Board's dismissal decision was appropriate, Plaintiffs would not be able to obtain review of the SSI entitlement issue. But that is because (as it appears the Board correctly found) they did not follow the administrative review process correctly and thereby forfeited their claim, not because the agency has itself somehow precluded judicial review of Plaintiffs' challenge. As such, federal question jurisdiction under 28 U.S.C. § 1331 is not permitted here.

Second, Plaintiffs' SSI entitlement issue (Count II) is otherwise jurisdictionally defective because Plaintiffs did not channel (although they could have channeled) it through the agency properly to obtain a reviewable "final decision" on the merits of that issue under 42 U.S.C. § 1395oo(f)(1). *See, e.g.*, *Empire Health Found. v. Burwell*, 209 F. Supp. 3d 261, 264 (D.D.C. 2016); *see also Salfi*, 422 U.S. at 766 (stating that a "'final decision' is a statutorily specified jurisdictional prerequisite"); *see also Heckler v. Ringer*, 466 U.S. 602, 605 (1984). Finality under

the Medicare statute consists of two requirements. First, Plaintiffs must have "presented" their claim to the Secretary. *Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018) ("*American Hospital*"); *Ass'n of Am. Med. Colleges v. Califano*, 569 F.2d 101, 110 (D.C. Cir. 1977) ("*AAMC*") (holding that the "final decision" requirement of 42 U.S.C. § 1395oo(f)(1) requires presentment of claim to the PRRB). Presentment is an "absolute prerequisite" to judicial review. *Action All. of Senior Citizens v. Leavitt*, 483 F.3d 852, 857-58 (D.C. Cir. 2007). Second, Plaintiffs must "fully exhaust all available administrative remedies." *Am. Hosp.*, 895 F.3d at 826; *see also AAMC*, 569 F.2d at 109-110 (holding that a provider must obtain a "final decision" of the PRRB). Plaintiffs have not satisfied the second requirement here with respect to the SSI entitlement issue; thus, Count II should be dismissed for lack of jurisdiction.

The fact that federal question jurisdiction is unavailable here does not mean that hospitals can never bring these types of claims in federal court. But given Plaintiffs' failure to obtain *any* decision from the Board concerning the merits of the SSI entitlement issue, or, alternatively, a decision granting expedited judicial review of that issue, it is clear that they have not, as to that issue, fully exhausted available administrative remedies prescribed by statute and regulations, thereby depriving this Court of subject matter jurisdiction over Count II of the Complaint. "Federal subject matter jurisdiction over claims arising under the Medicare Act is permitted only upon the *completion* of the administrative process outlined in that statute and its implementing regulations." *Three Lower Cntys. Cmty. Health Servs. Inc. v. HHS*, 517 F. Supp. 2d 431, 435 (D.D.C. 2007) (emphasis added), *aff'd*, 317 F. App'x 1. "The Supreme Court has made clear that if this process is available, it must be followed, even if it is time-consuming, . . . and even if the agency cannot grant the relief sought." *Id.* (citing *Ill. Council*, 529 U.S. at 20, 22-24); *see also, e.g., Cape Cod Hosp. v. Leavitt*, 565 F. Supp. 2d 137, 139 (D.D.C. 2008). As explained previously, the Medicare

- 13 -

statute and implementing regulations set forth a familiar administrative and judicial review process available to hospitals wishing to appeal issues, like the SSI entitlement issue, relating to Medicare reimbursement determinations. *See*, *e.g.*, 42 U.S.C. § 1395oo(a), (b), (f)(1); 42 C.F.R. §§ 405.1867, 405.1877, 405.1885(a)(5), 405.1889. Of particular relevance is the requirement that appeals of a revised determination are limited to matters "specifically revised in [the] revised determination." 42 C.F.R. § 405.1889(b)(1).

Plaintiffs allege that they presented the SSI entitlement issue to the Board in connection with their appeals of the revised NPRs, Compl. ¶¶ 67-68, rather than in connection with appeals of their initial NPRs (which are thus not at issue here). But, based on the attachments to the Complaint, that appears to be precisely why the Board ultimately dismissed that issue from their appeals. Per Plaintiffs, the Board dismissed the SSI entitlement issue from their appeals of the revised NPRs for lack of jurisdiction pursuant to 42 C.F.R. § 405.1889(b)(1), without issuing a final decision on the merits of the issue, because it found that those revised NPRs did not include specific revisions to Plaintiffs' DSH adjustments related to the SSI entitlement issue, rendering that issue beyond the scope of Plaintiffs' appeals, Compl. ¶ 72; *see also* Compl. Exs. 1 at 10-11, 2 at 10-11.[6] Simply put, Plaintiffs failed to properly present and exhaust during the administrative review process the SSI entitlement issue they now seek to raise in Count II of the Complaint. As such, the Court lacks jurisdiction over that issue.

---

[6] This argument—whether the Board properly dismissed Plaintiffs' appeals under the Medicare statute and its implementing regulations—is the question the Secretary offers should be addressed after these extraneous counts are dismissed from this lawsuit (assuming, of course, that Count I is properly before this Court, as appears likely). If the Court later were to find fault with the Board's dismissal decision, the proper remedy in that case would be a remand to the Board for further proceedings on the merits of the SSI entitlement issue. But unless such proceedings happen and result either in a final agency decision on the merits of that issue or in Plaintiffs obtaining expedited judicial review of it, this Court lacks jurisdiction to decide the merits of that issue.

*Three Lower Counties* is instructive here. In that case, before filing with the Board a formal appeal concerning a Medicare reimbursement issue, a provider exchanged correspondence with the Board about that issue informally, and the Board ultimately treated the provider's correspondence as an appeal, sending the provider "a letter assigning it a case number." *Three Lower Cntys.* at 433. The provider did not pursue the appeal and instead notified the Board that it would treat an earlier letter from the Board about the issue as "a timely and otherwise proper decision of the Board . . . ." *Id.* Thereafter, as in this case, *see* Compl. Exs. 1 and 2, the Board "issued a decision dismissing [the provider's] appeal for lack of jurisdiction," *Three Lower Cntys.* at 433. Again, as happened here, Compl. ¶¶ 83-88, the provider then sought judicial review of the substantive Medicare reimbursement issue about which it had corresponded with the Board, *Three Lower Cntys.* at 433-34. HHS sought to dismiss the provider's claim for lack of jurisdiction, and this Court granted that motion, reasoning that the provider could access judicial review "once it has exhausted its administrative remedies through the statutorily provided appeals process" but that, "[u]ntil [the provider] does so, . . . this Court lacks jurisdiction over its claims." *Id.* at 436-37. The same result should obtain here: the Court should dismiss Count II for lack of jurisdiction.[7]

## II. Counts III and IV Should Be Dismissed for Lack of Jurisdiction and Failure to State a Claim

In Counts III and IV of the Complaint, Plaintiffs seek relief in the nature of mandamus, under 5 U.S.C. § 706(1) and 28 U.S.C. § 1361, requiring the Secretary to furnish them with data concerning whether their Medicare patients were entitled to SSI benefits. Plaintiffs deem the desired data necessary to verify and challenge the calculation of their SSI fractions. Compl.

---

[7]      Even if the Court were to disagree with this conclusion and conclude it has jurisdiction over Count II, it is highly questionable whether that count successfully states a claim upon which relief can be granted given that, as noted, the Supreme Court already has decided in the Secretary's favor the legal issue embodied in that count. *See Advocate Christ*, 145 S. Ct. at 1267-74.

¶¶ 89-99.    Because "[t]he standards for challenging agency inaction under the APA and the Mandamus Act are the same," *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 90 (D.D.C. 2022), Defendant's discussion of Counts III (Mandamus Act) and IV (APA) are combined for efficiency.

Jurisdiction over actions "in the nature of mandamus" under § 1361 is strictly confined, *In re Cheney*, 406 F.3d 723, 729 (D.C. Cir. 2005); indeed, "[f]ew legal standards are more exacting than the requirements for invoking mandamus jurisdiction under § 1361," *Illinois v. Ferriero*, 60 F.4th 704, 714 (D.C. Cir. 2023). As the D.C. Circuit has emphasized, mandamus is "drastic," available only in "extraordinary situations," and "hardly ever granted." *In re Cheney*, 406 F.3d at 729. The minimum jurisdictional prerequisites to such relief are: (1) that the plaintiff has a clear and indisputable right to relief, (2) that the defendant has a clear, nondiscretionary duty to act, and (3) that the plaintiff has exhausted all other avenues of relief and has no other adequate remedy available to him. *Power v. Barnhart*, 292 F.3d 781, 784 (D.C. Cir. 2002); *Bond v. U.S. Dep't of Justice*, 828 F. Supp. 2d 60, 75 (D.D.C. 2011). Even if the plaintiff overcomes these hurdles, whether mandamus relief should issue is discretionary, *In re Cheney*, 406 F.3d at 729, and typically there must be some "compelling equitable grounds" for mandamus to issue, *Nat'l Shooting Sports Found. v. Jones*, 840 F. Supp. 2d 310, 323 (D.D.C. 2012) (citations and quotation marks omitted).

Plaintiffs' mandamus claim meets none of these requirements and fails for numerous reasons, jurisdictional and otherwise.[8]

---

[8]    In *Your Home Visiting Nurse Services, Inc. v. Shalala*, 525 U.S. 449, 456-57 n.3 (1999), the Supreme Court expressly reserved deciding whether 42 U.S.C. § 405(h) precludes jurisdiction under 28 U.S.C. § 1361 in all circumstances. *See also Ringer*, 466 U.S. at 616-17. The Secretary recognizes that this Court is bound by the D.C. Circuit's holding that mandamus is not barred by § 405(h). *See Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 813 (D.C. Cir. 2001). The government preserves its right to challenge that holding in an appropriate case.

A.    **Plaintiffs Have Not Shown That They Have a Clear Right to the Relief Sought or That There Is a Clear Non-Discretionary Duty Enforceable in Mandamus**

Plaintiffs have not shown that they have "clear and indisputable right to relief," or that the Secretary has breached a "clear, nondiscretionary duty to act." The right and duty in this case purportedly arise from Medicare Modernization Act § 951. *See* Compl. ¶¶ 6, 90, 93-94, 99. That statute requires the Secretary to "arrange to furnish to [relevant] hospitals . . . the data necessary for such hospitals to compute the number of patient days used in computing the disproportionate patient percentage . . . for that hospital for the current cost reporting year." Medicare Modernization Act § 951.

To the extent this statute creates a clear, nondiscretionary duty enforceable in mandamus, the Secretary has complied with it. As the Supreme Court has explained, pursuant to the statutory mandate in Medicare Modernization Act § 951, "the Secretary has adopted procedures for turning over the SSI data to hospitals upon request." *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 151 n.3 (2013) (citing 70 Fed. Reg. 47,278, 47,438 (2005)). Pursuant to that established process, the Secretary provides hospitals with the "matched patient-specific Medicare Part A inpatient days/SSI eligibility data on a month-to-month basis" for the relevant period. *See* 70 Fed. Reg. at 47,440. Mandamus relief is thus inappropriate because the Secretary has already complied with the statutory mandate.

Plaintiffs do not allege that the Secretary has refused to follow the established process for providing hospitals, like them, with SSI data upon request. Rather, they appear only to take issue with the adequacy of the SSI data the Secretary does provide pursuant to that process, as they allege that the Secretary is required to "giv[e] providers access to the SSI enrollment files made available to the Secretary from the [Social Security Administration], including the assigned payment code for all of a hospital's Medicare patients who are SSI enrollees." Compl. ¶ 94. But

- 17 -

mandamus relief is not the proper vehicle to review the *adequacy* of the agency's compliance with a non-discretionary duty. "Mandamus has never been regarded as the proper writ to control the judgment and discretion of an officer as to the decision of a matter which the law gave him the power and imposed upon him the duty to decide for himself. The writ can never be used as a substitute for a writ of error." *Citizens for Resp. & Ethics in Wash. v. SEC*, 916 F. Supp. 2d 141, 151 (D.D.C. 2013) (quoting *Wilbur v. United States*, 281 U.S. 206, 220 (1930)).

And contrary to Plaintiffs' apparent belief, Medicare Modernization Act § 951 certainly does not give rise to a clear, non-discretionary duty to "giv[e a hospital] access to the SSI enrollment files made available to the Secretary from the [Social Security Administration], including the assigned payment code for all [the] hospital's Medicare patients who are SSI enrollees." Compl. ¶ 94 (emphasis added). Rather, the Secretary's provision of patient-specific, date-specific data on SSI entitlement satisfies the Secretary's obligation to furnish data "necessary . . . to compute the number of patient days" used in the SSI fraction. The statute does not require the production of other kinds of data that neither the Social Security Administration ("SSA") nor HHS regards as indicative of entitlement to SSI benefits. Nor does it require the Secretary to provide information that Plaintiffs might find helpful in developing their own legal theories and arguments in litigation about which days should be treated as days for Medicare patients who are "entitled to [SSI] benefits."

Even if one could read the obligation more broadly, it would not justify mandamus relief. "Where a duty depends on a statute . . . the construction or application of which is not free from doubt, it involves 'the character of judgment or discretion which cannot be controlled by mandamus.'" *Walpin v. Corp. for Nat'l & Cmty. Serv.*, 718 F. Supp. 2d 18, 23 (D.D.C. 2010) (quoting *Wilbur*, 281 U.S. at 219). "By contrast, when courts have found that a statute creates a

clear and compelling duty, the statute has ordinarily described the precise action the officer must undertake." *Citizens for Resp. & Ethics in Wash. v. Trump*, 302 F. Supp. 3d 127, 136-37 (D.D.C. 2018). Nothing in the statute suggests, much less precisely specifies, that hospitals must be provided with SSI beneficiary payment codes in some specific amount of detail as to their patients.

Plaintiffs' attempt to identify a non-discretionary duty fails for additional reasons. First, contrary to Plaintiffs' apparent belief, the Secretary does not have access to "the assigned payment code for all of a hospital's Medicare patients who are SSI enrollees," Compl. ¶ 94, because they are not contained in the SSI eligibility file that SSA provides to CMS annually. Although SSA provides CMS with "monthly indicators" of entitlement or non-entitlement, those indicators are merely based on assigned SSI payment codes. *See Advocate Christ Med. Ctr. v. Becerra*, 80 F.4th 346, 355 (D.C. Cir. 2023) (citing 75 Fed. Reg. 50,042, 50,276 (Aug. 16, 2010)); *see also Baystate Med. Ctr. v. Leavitt*, 545 F. Supp. 2d 20, 29 n.17 (D.D.C. 2008) (noting that the parties had stipulated that the SSI data provided by SSA contain 42 monthly indicators, described as "ones and zeros," denoting the payment or non-payment of federal SSI cash benefits). The SSI eligibility file that CMS receives from SSA does not include the SSI payment codes themselves, nor does it otherwise indicate the reason a particular person was not entitled to SSI benefits in a given month. *See id.* The Secretary cannot be compelled to produce that which he does not have. *See Advocate Christ*, 80 F.4th at 355.

Second, and finally, any clear nondiscretionary duty to disclose in this case necessarily would be offset by significant countervailing duties that limit or prohibit disclosure. The SSI eligibility information that Plaintiffs seek is sensitive, personally identifiable information about patients, the disclosure of which is subject to the restrictions of, *inter alia*, the Privacy Act of 1974. *See* 70 Fed. Reg. at 47,440 (stating that CMS "is strictly prohibited from disclosing SSI eligibility

information," and that SSA also "is prohibited from disclosing this information by Federal law and regulations"); 75 Fed. Reg. at 50,280 (stating that "CMS is not authorized to share SSA data"). Plaintiffs fail to acknowledge these significant concerns, let alone explain how they are outweighed by Plaintiffs' pecuniary interests or why the Court should otherwise disregard them.

### B.    Plaintiffs Have Not Shown That They Exhausted All Other Avenues for Relief and That There Are No Alternative Remedies Available

Plaintiffs have also failed to show that they have exhausted all available remedies and that no other adequate remedies exist for any alleged right to more SSI eligibility information.

First, as explained above, the Secretary has already created a process whereby hospitals may seek access to data in accordance with Medicare Modernization Act § 951. *See* 70 Fed. Reg. at 47,439; *Auburn*, 568 U.S. at 151 n.3. Plaintiffs do not suggest that they availed themselves of this remedy, nor do they explain why it would be inadequate. All they say is that they "have been harmed by way of . . . reduced DPPs and resulting reduced Medicare payments" because they "have been deprived of the tools required to" verify CMS's calculation of their DSH adjustments, Compl. ¶ 95, without explaining how precisely the Secretary's existing process for disclosing data in accordance with Medicare Modernization Act § 951 "deprive[s]" them of anything. As explained above, the agency itself does not receive the SSI payment codes from SSA that Plaintiffs seek. But even if it did, Plaintiffs have not shown that the additional information is necessary for them to verify and challenge the Secretary's calculation of their DPPs and DSH adjustments. The information provided under the Secretary's process—indicators of SSI entitlement for each Medicare-entitled patient, including the relevant dates of the patient stay—allows Plaintiffs to verify and challenge the Secretary's computation of their DPPs, including the Secretary's determination of the numerator of the SSI fraction. In a jurisdictionally proper case (i.e., not this one), Plaintiffs are free to go beyond such challenges and argue that the Secretary's reading of the

statutory phrase "entitled to [SSI] benefits . . . under title XVI" is unduly narrow. However, the mere fact that Plaintiffs interpret the statute differently does not mean the Secretary must obtain and provide them with data sufficient to calculate their SSI fraction in accordance with their preferred interpretation.

In any case, Plaintiffs also have failed to show that there are no other adequate remedies for their alleged harm. Plaintiffs do not explain, for example, why the remedies available under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, are inadequate. Plaintiffs vaguely assert that unspecified "[h]ospitals have unsuccessfully sought to obtain relevant data from alternative sources, including CMS and SSA, to establish an approximate measure of the number of Medicare patients who are SSI Enrollees omitted from the Secretary's count of SSI Days." Compl. ¶ 92. This falls far short of showing Plaintiffs themselves availed themselves of other potentially available remedies, much less that no other alternative remedies remain available.

## C.    Plaintiffs Fail to Identify Compelling Equitable Grounds for Mandamus Relief

Plaintiffs make no effort to demonstrate the "compelling equitable grounds" needed to justify the extraordinary relief of mandamus; rather, they rest on their erroneous claim that Medicare Modernization Act § 951 requires the Secretary to furnish them "the assigned SSI payment code for all of a hospital's Medicare patients who are SSI Enrollees," Compl. ¶ 94. That is not true and, even if it were, it does not show that there are also compelling "equitable" grounds to grant mandamus relief. There are not.

In fact, there are compelling equitable grounds to deny such relief. As noted above, granting the relief Plaintiffs seek would require disclosure of personally identifiable information pertaining to each hospital's Medicare patients. These third-party individuals are not currently before the Court, and there is no obvious mechanism to protect their privacy interests. Plaintiffs

seek highly sensitive information about these persons reflected in the SSI payment codes assigned to them in the months of their hospitalizations. This information might include, for example, codes indicating that they refused treatment for drug addiction or alcoholism, were subject to administrative sanctions for making a false statement, or that they were fleeing to avoid prosecution for a felony or violating a condition of probation or parole. *See* Social Security Administration, SI 02301.215 Summary of Posteligibility (PE) Suspension, Stop Payment and Termination Events by Payment Status Code (PSC), Program Operations Manual System (POMS) (April 24, 2025), http://policy.ssa.gov/poms.nsf/lnx/0502301215. Moreover, Plaintiffs seek this information to support a claim that, as already discussed, they did not properly raise before the Board and that is not properly before this Court. It would defy logic to conclude that equity requires the disclosure of this information when the Court lacks jurisdiction over the claim to which that information relates. Given the profound privacy interests at stake, Plaintiffs' failure to explain why the information is actually needed, and the manifest lack of any need for disclosure of that information at this juncture, there are no compelling equitable grounds for mandamus relief.

### D.     In the Alternative, Counts III and IV Should Be Dismissed for Failure to State a Claim Because the Legal Issue Underlying Those Counts Has Already Been Resolved in the Secretary's Favor by the D.C. Circuit

Although the Court should not reach any substantive merits issues in light of the jurisdictional deficiencies discussed above, Plaintiffs' claims (really, a single claim) in Counts III and IV of the Complaint are also subject to dismissal for failure to state a claim. Fed. R. Civ. P. 12(b)(6). As noted above, Counts III and IV of the Complaint raise a legal claim that has now been resolved in the Secretary's favor by the D.C. Circuit.

In *Advocate Christ*, a group of hospitals invoked 28 U.S.C. § 1361 to "seek an order compelling HHS to provide them with the payment codes assigned by SSA to their respective patients" in order "to verify or challenge CMS's calculation of their respective Medicare

- 22 -

fractions." 80 F.4th at 354. So too with Plaintiffs here. Compl. ¶¶ 90, 93-94, 99. As in this case, the plaintiff hospitals in *Advocate Christ* argued that Medicare Modernization Act § 951 required CMS to disclose not just "a binary code reflecting whether specific patient days were attributed to individuals coded by SSA" in certain ways reflecting an entitlement to SSI benefits (or not), but also, "for all patient days attributed to SSI enrollees, the specific codes used by SSA to track why those individuals did or did not qualify for the monthly cash payment." 80 F.4th at 354-55. The D.C. Circuit definitively rejected this argument and held that Medicare Modernization Act § 951 "does not unambiguously compel release of this data" because Medicare Modernization Act § 951 "cannot mean . . . that HHS must give hospitals data that it never received from SSA in the first place. And SSA does *not* provide HHS with the specific codes assigned to individual patients." *Id.* at 355 (citing 75 Fed. Reg. at 50,276; *see also Baystate*, 545 F. Supp. 2d at 29 n.17. This holding was not affected by the Supreme Court's decision in the Secretary's favor concerning the interpretive question concerning the Medicare statute that Plaintiffs raise in Count II of the Complaint (and which decision, in any event, affirmed the D.C. Circuit's judgment). *See Advocate Christ*, 145 S. Ct. at 1266-74.

Plaintiffs' claims in Counts III and IV boil down to a single claim—that, under Medicare Modernization Act § 951, Plaintiffs have a clear right to obtain, and CMS has a clear duty to provide, specific SSA payment codes concerning Plaintiffs' patients' SSI eligibility, and the Court can enforce that clear right and duty in mandamus under 28 U.S.C. § 1361 (Count III) or under 5 U.S.C. § 706(1) (Count IV). The D.C. Circuit's decision in *Advocate Christ* forecloses this claim as a matter of law. As such, Counts III and IV of the Complaint should be dismissed under Rule 12(b)(6) even if dismissal were not already required for lack of jurisdiction under Rule 12(b)(1).

**III.    The Court Should Hold in Abeyance Defendant's Obligation to Respond to the Remaining Counts for Thirty Days After Ruling**

Defendant's partial motion to dismiss "suspends the time by which it must respond to the entirety of the Complaint." *Betz v. First Credit Servs.*, 139 F. Supp. 3d 451, 456 n.4 (D.D.C. 2015). "Rule 12(a)(4) of the Federal Rules of Civil Procedure provides that the service of a motion under Rule 12 suspends the movant's time to respond until 14 days after the court's disposition of the motion." *Kangethe v. D.C. Dep't of Emp. Servs.*, 891 F. Supp. 2d 69, 71 (D.D.C. 2012).

Pursuant to Rule 6(b), Defendant requests that the fourteen-day deadline allotted under Rule 12(a)(4) for responding to Plaintiff's Complaint be extended until thirty days after the Court rules on its motion to dismiss in order to give the government sufficient time to analyze the decision and draft an Answer concerning any remaining claims in this matter.

## CONCLUSION

For these reasons, Defendant respectfully asks the Court to dismiss Counts II through IV of the Complaint with prejudice and hold in abeyance Defendant's deadline to respond to any remaining claims in the Complaint pending the Court's ruling on Defendant's partial motion to dismiss.

 Dated: May 14, 2025

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By:  _____/s/ Kaitlin K. Eckrote_____
Kaitlin Eckrote
D.C. Bar #1670899
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2485

*Attorneys for the United States of America*

Of Counsel:

SEAN R. KEVENEY
  Acting General Counsel

RUJUL H. DESAI
  Deputy General Counsel
  Chief Legal Officer for CMS

DAVID L. HOSKINS
  Deputy Associate General Counsel for Litigation

STEPHEN M. RICHMOND
  Attorney
U.S. Department of Health and Human Services